**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JONNA WASHINGTON<br>1045 Church Ave.<br>Cincinnati, OH 45246 | CASE NUMBER:<br><br>JUDGE: |
|       Plaintiff, | |
| v. | **JURY DEMAND ENDORSED HEREIN** |
| EVERBANK<br>c/o CSC – Lawyers Incorporating Service<br>(Corporate Service Company)<br>50 W. Broad Street, Suite 1800<br>Columbus, OH 43215, | |
| and | |
| GREEN TREE SERVICING, LLC<br>c/o CT Corporation System<br>1300 East 9th Street<br>Cleveland, OH 44114 | |
|       Defendants. | |

**COMPLAINT FOR MONEY DAMAGES**

The following allegations are based upon Plaintiff Jonna Washington ("Ms. Washington")'s personal knowledge, the investigation of counsel, and information and belief.  Ms. Washington, through counsel, alleges as follows:

**I. PRELIMINARY STATEMENT**

1. In 2004, Ms. Washington refinanced residential real property located at 1045 Church Ave., Cincinnati, OH 45246 ("the Church Property") with a note secured by a mortgage ("the Note") ("the Mortgage") (collectively, "the Mortgage Loan").  A copy of the Note and Mortgage are attached as Exhibits A and B.

2. Defendant Green Tree Servicing, LLC ("Green Tree") is the servicer of the Mortgage Loan.

3. On May 20, 2013, Defendant Everbank filed an action to foreclose on the Mortgage Loan, Hamilton County Common Pleas, Case No. A 1303699 ("the Foreclosure Action").  A copy of an excerpt of the Foreclosure Action Complaint is attached as Exhibit C.

4. Everbank purports to be the owner of the Mortgage Loan.

5. Throughout the pendency of the Foreclosure Action, Ms. Washington worked with Green Tree to obtain a loan modification and save her home.

6. Ultimately, on December 4, 2014, Green Tree notified Ms. Washington that she was approved for a loan modification ("the December 2014 Acceptance").  A copy of the December 2014 Acceptance is attached as Exhibit D.

7. The December 2014 Acceptance indicated that in order to accept the loan modification, Ms. Washington was required to return an executed copy of the modification agreement to Green Tree by January 1, 2015.  Green Tree also verbally told Ms. Washington that she was required to have the loan modification agreement notarized by a notary delegated by Green Tree.

8. Ms. Washington scheduled a notary appointment for December 16, 2014.  On December 15, 2014, Ms. Washington's brother unexpectedly passed away.  Ms. Washington – as her brother's power of attorney and closest relative – was required to make arrangements for her brother's funeral and burial.  The morning of the scheduled notary appointment, Ms. Washington called Green Tree to notify them that she would have to reschedule.  The next day – and more than two weeks before Ms.

Washington's deadline to submit the executed loan modification agreement – Green Tree sent Ms. Washington a letter indicating Green Tree denied Ms. Washington a loan modification ("the December 2014 Denial").  The denial letter indicated, "[y]ou have failed to provide the final executed modification documents within the required time frame." The December 2014 Denial letter is attached as Exhibit E.

9.  Even though Ms. Washington was within the time frame to submit the executed loan modification agreement, Green Tree closed the loan modification.  Green Tree informed Ms. Washington that she was required to submit an entire new loss mitigation application to be eligible for a loan modification.  Ms. Washington submitted the requested documentation.  Nevertheless, Green Tree failed to send Ms. Washington notices required by federal law, failed to properly evaluate Ms. Washington for loss mitigation options, refused to offer Ms. Washington a new loan modification, and denied Ms. Washington an opportunity to appeal loss mitigation denials as required by federal law.

10.  Ms. Washington institutes this action against Green Tree for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 1601, *et seq.*, and Regulation X, 12 C.F.R. 1024.

11.  Ms. Washington institutes this action against Green Tree and Everbank for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1601 *et seq.*.

12.  Ms. Washington also institutes this action against Green Tree and Everbank for fraud.

**II. JURISDICTION & VENUE**

13.  This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

14. This Court has subject matter jurisdiction over Count Two under the FDCPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

15. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. 1367 because the claims involve the same case or controversy.

16. This Court has personal jurisdiction over Green Tree because Green Tree transacts business within this District, the Mortgage Loan was incurred within this District, and the property which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

17. This Court has personal jurisdiction over Everbank because Everbank transacts business within this District, the Mortgage Loan was incurred within this District, and the property which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

18. Venue is proper in accordance with 28 U.S.C. 1391(b)(3), as Green Tree and Everbank are subject to personal jurisdiction in this District.

## III. PARTIES

19. Each action or inaction alleged herein against Green Tree is also an allegation of action or inaction by Green Tree's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

20. Each action or inaction alleged herein against Everbank is also an allegation of action or inaction by Everbank's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

21. Ms. Washington is a natural person currently residing within this Court's jurisdiction at 1045 Church Ave., Cincinnati, OH 45246.

22. At all times relevant to this transaction, Ms. Washington was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

23. Green Tree is a business organized in the State of Delaware.

24. At all times relevant to this transaction Green Tree is and was a corporation.

25. At all times relevant to this transaction, Green Tree was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

26. Everbank is a savings association with its principal place of business in the State of Florida.

27. At all times relevant to this transaction, Everbank was and is an association.

28. At all times relevant to this transaction, Everbank was and is an **"Organization"** within the meaning of TILA, 15 U.S.C. 1602(d) (formerly, 15 U.S.C. 1602(c)).

29. At all times relevant to this transaction, Everbank was and is a **"Person"** within the meaning of TILA, 15 U.S.C. 1602(e) (formerly, 15 U.S.C. 1602(d)).

30. In 2002, Ms. Washington entered into the Mortgage Loan with the original lender, Safeway Mortgage Company ("Safeway"), to refinance the Church Property.

31. Ms. Washington used the Note and Mortgage to borrow money to fund her purchase of her primary residence, the Church Property.

32. The Church Property is designed principally for the occupancy of from one to four families.

33. Ms. Washington was and is obligated or allegedly obligated to pay on the Mortgage Loan.

34. The Mortgage Loan was and is an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which

are the subject of the transaction are primarily for personal, family, or household purposes.

35. The Mortgage Loan is a **Debt** within the meaning of the FDCPA, 15 U.S.C. 1692a(5).

36. At all times relevant to this transaction, Ms. Washington was and is a **"Consumer"** within the meaning of the FDCPA, 15 U.S.C. 1692a(3).

37. The 2002 transaction was and is a consumer credit transaction within the meaning of 15 U.S.C. 1602.

38. At all times relevant to this transaction, Safeway was a corporation, partnership, cooperative, or association.

39. At all times relevant to this transaction, Safeway was and is an **"Organization"** within the meaning of 15 U.S.C. 1602(d) (formerly, 15 U.S.C. 1602(c)).

40. At all times relevant to this transaction, Safeway was and is a **"Person"** within the meaning of 15 U.S.C. 1602(e) (formerly, 15 U.S.C. 1602(d)).

41. At all times relevant to this transaction Safeway regularly extended consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required.

42. The Mortgage Loan was initially payable to Safeway.

43. At all times relevant to this transaction, the Safeway was and is a **"Creditor"** within the meaning of 15 U.S.C. 1602(g) (formerly, 15 U.S.C. 1602(f)).

44. Everbank regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

45. Everbank acquired the Mortgage Loan when the Mortgage Loan was in default.

46. At the time Everbank acquired its interest in the Mortgage Loan, Everbank treated the Mortgage Loan as though the Mortgage Loan was in default.

47. At all times relevant to this transaction, Everbank did not: offer or extend credit creating the Mortgage Loan, receive an assignment of the Mortgage Loan, or receive a transfer of the Mortgage Loan.

48. At all times relevant to this transaction, Everbank was and is a **Debt Collector** within the meaning of the FDCPA, 15 U.S.C. 1692a(6).

49. The Mortgage Loan was purportedly assigned to Everbank.

50. Everbank purports to be the investor and owner of the Mortgage Loan.  (Exhibit C.)

51. The 2002 transaction was and is a **"Federally Related Mortgage Loan"** within the meaning of RESPA, 12 U.S.C. 2602(1).

52. At all times relevant to this transaction, Ms. Washington was and is a **"Borrower"** of a federally related mortgage loan within the meaning of RESPA.

53. At all times relevant to this transaction, Ms. Washington sent and Green Tree received scheduled periodic payments pursuant to the terms of Ms. Washington's residential Mortgage Loan.

54. At all times relevant to this transaction, Green Tree engaged and engages in **"Servicing"** Ms. Washington's residential Mortgage Loan within the meaning of RESPA, 12 U.S.C. 2605(i)(3).

55. At all times relevant to this transaction, Green Tree was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. 2605(i)(2).

56. At all times relevant to this transaction, Everbank engaged and engages in **"Servicing"** Ms. Washington's residential Mortgage Loan within the meaning of RESPA, 1605(i)(3).

57. At all times relevant to this transaction, Everbank was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. 2605(i)(2).

## IV. FACTUAL ALLEGATIONS

58. Ms. Washington incorporates all paragraphs by reference as though fully written here.

59. During 2012 and 2013 Ms. Washington began to experience financial difficulty.

60. Ms. Washington cooperated fully with Green Tree to modify her Mortgage Loan so she could continue to make monthly mortgage loan payments.

61. Nevertheless, Green Tree refused to properly evaluate Ms. Washington for a loan modification, provide Ms. Washington with all notices required by federal law, honor its loan modification agreement offer, or provide Ms. Washington with an opportunity to appeal loan modification denials.

62. Furthermore, despite Ms. Washington's pending loss mitigation applications, Everbank aggressively moved forward with the foreclosure action in violation of federal law.

63. Everbank alleges that the Mortgage Loan became in default on March 1, 2013 (Exhibit C, ¶ 1.)

64. Everbank did not wait one hundred and twenty (120) days from the alleged date of default to file its Complaint in the Foreclosure Action.

65. On May 20, 2013, Everbank filed the Foreclosure Action against Ms. Washington.

66. Everbank filed its Complaint in the Foreclosure Action eighty (80) days after Plaintiff alleges Ms. Washington became delinquent on her Mortgage Loan.

67. On March 18, 2014, Everbank filed its Motion for Summary Judgment and Motion for Default Judgment.

68. On or around April 25, 2014, Ms. Washington submitted to Green Tree an application for loss mitigation options ("the April 2014 Application.")

69. Ms. Washington's April 2014 Application contained every document that Green Tree requested.

70. Green Tree failed to send written correspondence or otherwise contact Ms. Washington to notify her that her April 2014 Application was complete or incomplete.

71. In response to Ms. Washington's April 2014 Application, Green Tree did not send written correspondence or otherwise contact Ms. Washington to notify her that she must submit additional documents or information to complete her application.

72. In response to Ms. Washington's April 2014 Application, Green Tree did not send written correspondence or otherwise contact Ms. Washington to notify her what – if any – additional documents or information she must send to Green Tree to complete her application.

73. In response to Ms. Washington's April 2014 Application, Green Tree did not send written correspondence or otherwise contact Ms. Washington to notify her when – if ever – she must send additional documents or information to Green Tree to complete her application.

74. Ms. Washington relied on Green Tree's failure to notify her, and believed that her April 2014 Application was complete.

75. In response to Ms. Washington's April 2014 Application, Green Tree did not exercise reasonable diligence in obtaining documents and information to complete Ms. Washington's April 2014 Application.

76. In response to Ms. Washington's April 2014 Application, Green Tree did not send Ms. Washington notice that Ms. Washington should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

77. In response to Ms. Washington's April 2014 Application, Green Tree failed to evaluate Ms. Washington for all loss mitigation options available to Ms. Washington.

78. Green Tree failed to send Ms. Washington written correspondence to notify Ms. Washington within thirty (30) days after it received Ms. Washington's April 2014 Application which loss mitigation options Green Tree would offer to Ms. Washington on behalf of the owner or assignee of the Mortgage Loan.

79. In response to Ms. Washington's April 2014 Application, Everbank failed to file a motion to withdraw its Motion for Summary Judgment and Default Judgment, failed to file a motion to stay proceedings pending Green Tree's review and decision regarding Ms. Washington's April 2014 Application, or otherwise attempt to prevent the Court from ruling on Everbank's Motion for Summary Judgment and Default Judgment.

80. In response to Ms. Washington's April 2014 Application, Green Tree failed to notify Everbank that it must file a motion to withdraw its Motion for Summary Judgment

and Default Judgment, file a motion to stay proceedings pending Green Tree's review and decision regarding Ms. Washington's April 2014 Application, or otherwise attempt to prevent the Court from ruling on Everbank's Motion for Summary Judgment and Default Judgment.

81. Despite Ms. Washington's complete April 2014 Application, Everbank ordered the sale of Ms. Washington's Church Property and filed a Notice of Sale with the Court on May 22, 2014.

82. On or around December 4, 2014, Green Tree sent Ms. Washington a letter indicating she was eligible for a Home Affordable Modification ("the December 2014 Acceptance.")

83. In the December 2014 Acceptance, Green Tree notified that Ms. Washington was required to sign and return to Green Tree the enclosed loan modification agreement by January 3, 2015.

84. On or around December 8, 2014, a representative of Green Tree called Ms. Washington and indicated that the loan modification agreement had to be notarized and it could only be notarized by a notary delegated by Green Tree.

85. The December 2014 Acceptance does not include a notary provision.

86. Even though the December 2014 Acceptance did not include a notary provision, Ms. Washington relied on Green Tree's statements and scheduled a notary appointment for December 16, 2014.

87. Green Tree failed to send written correspondence indicating what additional actions Ms. Washington was required to perform to submit a complete loan modification application.

88. Green Tree called Ms. Washington to inform her what additional actions Green Tree required.

89. On December 15, 2014, Ms. Washington's brother unexpectedly passed away.

90. Ms. Washington was her deceased brother's power of attorney and closest relative.

91. It was Ms. Washington's familial and legal responsibility to attend to her deceased brother's funeral and burial arrangements.

92. Ms. Washington's responsibilities during this unexpected and mournful time prevented her from attending the notary appointment scheduled for December 16, 2014.

93. On the morning of December 16, 2014 – prior to the scheduled notary appointment – Ms. Washington called and left a message with Ms. Washington's appointed representative at Green Tree and notified Green Tree that she would be unable to attend the notary appointment and requested a time to reschedule the notarization.

94. Over the next several days, Ms. Washington called her appointed representative at Green Tree to reschedule her notary appointment.

95. Despite Ms. Washington's several attempts to contact Green Tree, she received no return phone calls and was unable to get in contact with her appointed representative until nearly a week later.

96. On December 17, 2014, Green Tree sent Ms. Washington a letter denying Ms. Washington the loan modification offered in the December 2014 Acceptance letter ("the December 2014 Denial").

97. In the December 2014 Denial letter, Green Tree indicated that its reason for denial was because: "You have failed to provide the final executed modification documents within the required time frame."

98. Pursuant to the December 2014 Acceptance letter, Ms. Washington had until January 3, 2015 – not December 17, 2014 – to submit the executed copy of the loan modification agreement.

99. On December 17, 2014 the December 2014 loan modification offer was still open.

100. Green Tree falsely represented that it was correctly reviewing and processing Ms. Washington's December 2014 Application and loan modification.

101. Green Tree falsely represented to Ms. Washington that Green Tree could no longer accept the executed copy of the loan modification agreement.

102. Green Tree falsely represented to Ms. Washington that she could no longer accept the December 2014 loan modification offer.

103. Ms. Washington relied on Green Tree's December 2014 Denial letter and did not take the actions to accept the December 2014 loan modification offer.

104. As a result of Green Tree's actions, Ms. Washington was prevented from entering into a loan modification.

105. Green Tree improperly denied Ms. Washington her loan modification.

106. Green Tree falsely represented the character, legal status, and amount of the Mortgage Loan.

107. Green Tree falsely represented that the loan modification was denied in an attempt to collect more on the Mortgage Loan than is owed.

108.    Everbank knew or should have known that Green Tree improperly denied Ms. Washington a loan modification.

109.    Everbank knew or should have known that Ms. Washington entitled to a loan modification.

110.    Everbank scheduled the Sheriff's sale and proceeded with the Sheriff's sale when Everbank knew or should have known that Ms. Washington was eligible for loss mitigation options.

111.    Everbank scheduled the Sheriff's sale and proceeded with the Sheriff's sale when Everbank knew or should have known that Ms. Washington had the right to appeal the denial of loss mitigation options in the December 2014 Denial letter.

112.    Everbank scheduled the Sheriff's sale and proceeded with the Sheriff's sale when Everbank knew or should have known that Ms. Washington did not reject all loss mitigation options offered to her by Green Tree.

113.    Everbank scheduled the Sheriff's sale and proceeded with the Sheriff's sale when Everbank knew or should have known that Ms. Washington did not fail to perform under an agreement on a loss mitigation option.

114.    Everbank knew or should have known that the Church Property should not have been scheduled for Sheriff's sale or sold at Sheriff's sale.

115.    Everbank took no action to stop the Sheriff's sale or stay the confirmation of sale.

116.    As a result of Green Tree's actions, Everbank proceeded with the Foreclosure Action and scheduled a Sheriff's Sale.

117.    As a result of Green Tree's actions, the Church Property was sold at Sheriff's sale.

118.   In the December 2014 Denial letter, Green Tree failed to provide Ms. Washington with notice of her right to appeal the decision, a date by which she must appeal, or any requirements for making an appeal.

119.   Rather than permitting Ms. Washington her right to appeal, Green Tree requested that Ms. Washington submit an entirely new loss mitigation packet.

120.   Following Green Tree's denial of Ms. Washington's December 2014 Application, Green Tree indicated that Ms. Washington must submit an entirely new loss mitigation packet to qualify for loss mitigation options.

121.   On or around January 21, 2015, Ms. Washington sent a new loss mitigation application that included all documents and information that Green Tree requested.

122.   Green Tree requested personal information from Ms. Washington when it had no need for this information to grant Ms. Washington a loan modification.

123.   Ms. Washington made every effort to submit the documents Green Tree requested to qualify for a loan modification.

124.   Ms. Washington relied on Green Tree's false statement that Ms. Washington was no longer eligible for loss mitigation options.

125.   As a result of Green Tree's actions, Ms. Washington suffers severe emotional distress, including anxiety, stress, and sleepless nights.

126.   As a result of Everbank's actions, Ms. Washington suffers severe emotional distress, including anxiety, stress, and sleepless nights.

127.   As a result of Green Tree's actions, Ms. Washington's home was sold.

128.   As a result of Everbank's actions, Ms. Washington's home was sold.

129.    As a result of Green Tree's actions, Ms. Washington was required to incur the

legal fees and expenses of initiating the present lawsuit.

130.    As a result of Everbank's actions, Ms. Washington was required to incur the legal

fees and expenses of initiating the present lawsuit.

## V. COUNT ONE – RESPA

131.    Ms. Washington incorporates all paragraphs by reference as though fully written

here.

132.    Green Tree's actions described herein constitute violations of RESPA, 12 U.S.C.

1601, *et seq*., and Regulation X, 12 C.F.R. 1024.40 and 12 C.F.R. 1024.41.

133.    By failing to provide Ms. Washington with the correct notices regarding Ms.

Washington's April 2014 Application, Green Tree violated Regulation X, 12 C.F.R.

1024.41(b)(2)(i)(B).

134.    By failing to exercise reasonable diligence in obtaining documents and

information to allegedly complete Ms. Washington's April 2014 Application, Green

Tree violated Regulation X, 12 C.F.R. 1024.41(b)(1).

135.    By failing to evaluate Ms. Washington for all loss mitigation options available to

Ms. Washington in response to her April 2014 Application, Green Tree violated

Regulation X, 12 C.F.R. 1024.41(c)(1)(i).

136.    By failing to send Ms. Washington a notice within thirty days after Green Tree

received Ms. Washington's April 2014 Application to inform her of her loss

mitigation options, Green Tree violated Regulation X, 12 C.F.R. 1024.41(c)(1).

137.    By failing to take action to halt the foreclosure judgment after Ms. Washington submitted her April 2014 Application, Green Tree violated Regulation X, 12 C.F.R. 1024.41(g).

138.    By failing to send Ms. Washington written correspondence to notify her that the modification agreement must be notarized to be validly submitted, Green Tree violated Regulation X, 12 C.F.R. 1024.41(b)(2)(i)(B).

139.    By repeatedly failing to contact Ms. Washington and timely return her phone calls, Green Tree violated Regulation X, 12 C.F.R. 1024.40(a)(3).

140.    By sending Ms. Washington notice that Green Tree denied Ms. Washington's December 2014 Application, Green Tree violated Regulation X, 12 C.F.R. 1024.41(c)(1)(i).

141.    By failing to notify Ms. Washington that she had a right to appeal the December 2014 Denial letter, Green Tree violated Regulation X, 12 C.F.R. 1024.41(d).

142.    By failing to notify Everbank that Green Tree approved Ms. Washington for a loan modification in December 2014, Green Tree violated Regulation X, 12 C.F.R. 1024.41(g).

143.    By failing to take action to prevent Everbank from scheduling the Sheriff's sale, Green Tree violated Regulation X, 12 C.F.R. 1024.41(g).

144.    By failing to take action to prevent the sale of the Church Property, Green Tree violated Regulation X, 12 C.F.R. 1024.41(g).

145.    Everbank's actions described herein constitute violations of RESPA, 12 U.S.C. 1601, *et seq.*, and Regulation X, 12 C.F.R. 12 C.F.R. 1024.41.

146.    By filing its Complaint within 120 days after the alleged date of default, Everbank violated Regulation X, 12 C.F.R. 1024.41(f)(1).

147.    By failing to take action to halt the foreclosure judgment after Ms. Washington submitted her April 2014 Application, Everbank violated Regulation X, 12 C.F.R. 1024.41(g).

148.    By moving for the order of sale after Ms. Washington submitted her April 2014 Application, Everbank violated Regulation X, 12 C.F.R. 1024.41(g).

149.    By scheduling the Sheriff's sale when Everbank knew or should have known that Ms. Washington was approved for a loan modification in December 2014, Everbank violated Regulation X, 12 C.F.R. 1024.41(g).

150.    By failing to take action to halt the Sheriff's sale when Everbank knew or should have known that Ms. Washington was approved for a loan modification in December 2014, Everbank violated Regulation X, 12 C.F.R. 1024.41(g).

151.    By failing to take action to stay the confirmation of sale when Everbank knew or should have known that Ms. Washington was approved for a loan modification in December 2014, Everbank violated Regulation X, 12 C.F.R. 1024.41(g).

152.    Green Tree's actions constitute violations of Regulation X, 12 C.F.R. 1024.38(b)(2).

153.    Everbank's actions constitute violations of Regulation X, 12 C.F.R. 1024.38(b)(2).

154.    Green Tree regularly fails to evaluate and process loss mitigation applications of its borrowers in compliance with RESPA and Regulation X.

155.    Green Tree regularly fails to manage ongoing foreclosure actions of its borrowers in compliance with RESPA and Regulation X.

156.    Everbank regularly fails to manage ongoing foreclosure actions of its borrowers in compliance with RESPA and Regulation X.

157.    Green Tree engaged in a pattern or practice of noncompliance with the requirements of RESPA.

158.    Everbank engaged in a pattern or practice of noncompliance with the requirements of RESPA.

159.    As a result of Green Tree's actions, Ms. Washington suffers severe emotional distress, including anxiety, stress, and sleepless nights.

160.    As a result of Everbank's actions, Ms. Washington suffers severe emotional distress, including anxiety, stress, and sleepless nights.

161.    As a result of Green Tree's actions, Ms. Washington was prevented from obtaining a loan modification and saving her home.

162.    As a result of Green Tree's actions, Ms. Washington was prevented from saving her home.

163.    As a result of Everbank's actions, Ms. Washington was prevented from saving her home.

164.    Green Tree is liable to Ms. Washington under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for each of Green Tree's violations of RESPA in excess of $250,00.00, and the costs of this action and attorney's fees, 12 U.S.C. 2605(f).

165.   At all times relevant to this transaction, Everbank directed or controlled or had the right to direct or control Green Tree's manner, terms, and course of action for servicing Ms. Washington's Mortgage Loan.

166.   At all times relevant to this transaction, Green Tree was Everbank's agent.

167.   At all times relevant to this transaction, Green Tree acted pursuant to a written agreement with Everbank.

168.   At all times relevant to this transaction, Green Tree's actions were within the scope of its authority from Everbank.

169.   As purported owner of Ms. Washington's Mortgage Loan, Everbank is vicariously liable under RESPA for the actions of its servicer Green Tree.

170.   Everbank is liable to Ms. Washington under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for each of Green Tree's violations of RESPA in excess of $250,00.00, and the costs of this action and attorney's fees, 12 U.S.C. 2605(f).

## VI. COUNT TWO – FDCPA

171.   Ms. Washington incorporates all paragraphs by reference as though fully written here.

172.   Green Tree's actions described in the Factual Allegations constitute false, deceptive, or misleading representations in connection with the collection of debt in violation of the FDCPA, 15 U.S.C. 1692e.

173.   Everbank's actions described in the Factual Allegations constitute false, deceptive, or misleading representations in connection with the collection of debt in violation of the FDCPA, 15 U.S.C. 1692e.

174.    Green Tree falsely represented the character, amount, and legal status of Ms. Washington's Mortgage Loan, in violation of the FDCPA, 15 U.S.C. 1692e(2)(A).

175.    Green Tree falsely represented that it performed services, in violation of the FDCPA, 15 U.S.C. 1692e(2)(B).

176.    Green Tree threatened to take action that it did not intend to take, in violation of the FDCPA, 15 U.S.C. 1692e(5).

177.    Green Tree made false representations to Ms. Washington and used deceptive means to collect or attempt to collect additional sums on the Mortgage Loan, in violation of the FDCPA, 15 U.S.C. 1692e(10).

178.    Everbank made false representations to Ms. Washington and used deceptive means to collect or attempt to collect additional sums on the Mortgage Loan, in violation of the FDCPA, 15 U.S.C. 1692e(10).

179.    Green Tree made false representations to Ms. Washington and used deceptive means to obtain personal information from Ms. Washington, in violation of the FDCPA, 15 U.S.C. 1692e(10).

180.    Green Tree used unfair and unconscionable means to collect or attempt to collect additional sums on Ms. Washington's Mortgage Loan, in violation of 15 U.S.C. 1692f.

181.    Everbank used unfair and unconscionable means to collect or attempt to collect additional sums on Ms. Washington's Mortgage Loan, in violation of 15 U.S.C. 1692f.

182.    Green Tree attempted to collect on Ms. Washington's Mortgage Loan when it was
        not expressly authorized by Ms. Washington's promissory note or mortgage, or by
        law, in violation of the FDCPA, 15 U.S.C. 1692f(1).

183.    Everbank attempted to collect on Ms. Washington's Mortgage Loan when it was
        not expressly authorized by Ms. Washington's promissory note or mortgage, or by
        law, in violation of the FDCPA, 15 U.S.C. 1692f(1).

184.    As a result of Green Tree's actions, Ms. Washington was prevented from saving
        her home.

185.    As a result of Everbank's actions, Ms. Washington was prevented from saving her
        home.

186.    As a result of Green Tree's actions, Ms. Washington endured severe emotional
        distress, sleepless nights, headaches, and anxiety.

187.    As a result of Everbank's actions, Ms. Washington endured severe emotional
        distress, sleepless nights, headaches, and anxiety.

188.    Ms. Washington suffered emotional distress as a result of Green Tree's actions.

189.    Ms. Washington suffered emotional distress as a result of Everbank's actions.

190.    As a result of Green Tree's actions, Ms. Washington was forced to incur
        attorney's fees and the expense of bringing this litigation.

191.    As a result of Everbank's actions, Ms. Washington was forced to incur attorney's
        fees and the expense of bringing this litigation.

192.    Green Tree is liable to Ms. Washington on this Count in an amount equal to or
        greater than: actual damages for each of Green Tree's violations of the FDCPA in
        excess of $250,000, 15 U.S.C. 1692k(a)(1); statutory damages in the amount of

$1,000, 15 U.S.C. 1692k(a)(2)(A); and the costs of this action and attorney's fees, 15 U.S.C. 1692k(a)(3).

193.    At all times relevant to this transaction, Everbank directed or controlled or had the right to direct or control Green Tree's manner, terms, and course of action for the collection of Ms. Washington's Mortgage Loan.

194.    At all times relevant to this transaction, Green Tree was Everbank's agent.

195.    At all times relevant to this transaction, Green Tree acted pursuant to a written agreement with Everbank.

196.    At all times relevant to this transaction, Green Tree's debt collection actions were within the scope of its authority from Everbank.

197.    As the purported owner of Ms. Washington's Mortgage Loan, Everbank is vicariously liable for the actions of the servicer of Ms. Washington's Mortgage Loan, Green Tree.

198.    Everbank is liable to Ms. Washington on this Count in an amount equal to or greater than: actual damages for each of Everbank's violations of the FDCPA in excess of $250,000, 15 U.S.C. 1692k(a)(1); statutory damages in the amount of $1,000, 15 U.S.C. 1692k(a)(2)(A); and the costs of this action and attorney's fees, 15 U.S.C. 1692k(a)(3).

## VII. COUNT THREE – FRAUD

199.    Ms. Washington incorporates all paragraphs by reference as though fully written here.

200.    Green Tree's actions described in the Factual Allegations constitute fraud.

201.    Green Tree sent the December 2014 Acceptance to Ms. Washington that indicated
        she was entitled to accept the loan modification agreement through January 3, 2015.

202.    Green Tree sent the December 17, 2014 loan modification denial letter to Ms.
        Washington when it knew that the December 2014 loan modification offer was still
        open.

203.    Green Tree should have known that the December 2014 loan modification offer
        was still open when Green Tree sent the December 17, 2014 loan modification denial
        letter to Ms. Washington.

204.    Green Tree utterly disregarded that the December 2014 loan modification offer
        was still open when Green Tree sent the December 17, 2014 loan modification denial
        letter to Ms. Washington.

205.    Green Tree made false representations when it knew that the statements were
        false.

206.    Green Tree made false representations when it should have known the statements
        were false.

207.    Green Tree made false representations with utter disregard as to the falsity of
        those statements.

208.    In the December 17, 2014 loan modification denial letter, Green Tree informed
        Ms. Washington that she could no longer accept the loan modification offer and her
        Mortgage Loan would not be modified.

209.    Green Tree sent the December 17, 2014 loan modification denial letter to mislead
        Ms. Washington to believe she could no longer accept the loan modification offer and
        the Mortgage Loan would not be modified.

210.    Green Tree sent the December 17, 2014 loan modification denial letter so Ms. Washington would fail to take the actions necessary to modify her Mortgage Loan.

211.    Ms. Washington acted reasonably and was justified to rely on the Green Tree's statements in its December 17, 2014 loan modification denial letter.

212.    On December 23, 2014, Green Tree contacted Ms. Washington and informed her that the loan modification offer was closed and she was required to submit new loss mitigation documentation.

213.    Neither by December 17, 2014 nor by December 23, 2014 was the loan modification offer closed.

214.    Green Tree contacted Ms. Washington on December 23, 2014 and informed her that the December 2014 loan modification offer was closed when Green Tree knew that the December 2014 loan modification offer was still open.

215.    Green Tree should have known that the December 2014 loan modification offer was still open when Green Tree contacted Ms. Washington on December 23, 2014 and informed her that the December 2014 loan modification offer was closed

216.    Green Tree utterly disregarded that the December 2014 loan modification offer was still open when Green Tree contacted Ms. Washington on December 23, 2014 and informed her that the December 2014 loan modification offer was closed.

217.    Green Tree contacted Ms. Washington on December 23, 2014 and informed her that the December 2014 loan modification offer was closed to mislead Ms. Washington to believe she could no longer accept the loan modification offer and the Mortgage Loan would not be modified.

218.    Green Tree contacted Ms. Washington on December 23, 2014 and informed her that the December 2014 loan modification offer was closed so Ms. Washington would fail to take the actions necessary to modify her Mortgage Loan.

219.    Ms. Washington acted reasonably and was justified to rely on the Green Tree's December 23, 2014 phone call that informed her that the December 2014 loan modification offer was closed.

220.    Ms. Washington relied on the December 17, 2014 loan modification denial letter and the December 23, 2014 correspondence and did not submit the executed copy of the loan modification agreement to Green Tree.

221.    As a result of Green Tree's actions, Ms. Washington was denied a loan modification.

222.    As a result of Green Tree's actions, Ms. Washington's home proceeded to Sheriff's sale and was sold to a third-party.

223.    As a result of Green Tree's actions, Ms. Washington endured sleepless nights, headaches, and anxiety.

224.    As a result of Green Tree's actions, Ms. Washington suffered severe mental anguish and emotional distress.

225.    As a result of Green Tree's actions, Ms. Washington was forced to incur attorney's fees and the expense of bringing this litigation.

226.    As a result of Green Tree's actions, Ms. Washington is entitled to actual damages, economic damages, non-economic damages, and punitive damages in excess of $250,000.00, and her attorney's fees and costs of this action.

227. As the purported owner of Ms. Washington's Mortgage Loan, Everbank is vicariously liable for Green Tree's actions.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Ms. Washington respectfully prays that this Court:

A. Assume jurisdiction of Ms. Washington's claims;

B. Grant judgment in favor of Ms. Washington on her claims;

C. Grant Ms. Washington the maximum damages she seeks on her counts, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

D. Award Ms. Washington the costs of this litigation, including filing fees and costs;

E. Award Ms. Washington her attorney's fees;

F. Award such other relief as the court deems appropriate.

Dated this 28th day of May, 2015.

Respectfully Submitted,
DOUCET & ASSOCIATES CO., LPA


/s/ Audrey J. Balint
Audrey J. Balint (0092153)
*Attorney for Plaintiff Jonna Washington*
700 Stonehenge Parkway, Suite 2B
Dublin, OH 43017
(614) 944-5219 PH
(818) 638-5548 FAX
Audrey@TroyDoucet.com

## **JURY TRIAL DEMANDED**

Plaintiff Jonna Washington respectfully requests a jury trial on all triable issues.


/s/ Audrey J. Balint
Audrey J. Balint (0092153)