**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JONNA WASHINGTON | Civil Action No.: 1:15-CV-00354 |
|      Plaintiff, | Judge: Susan J. Dlott |
| v. | Magistrate Judge: Karen L. Litkovitz |
| Green Tree Servicing LLC, *et al.* | |
|      Defendant. | |

**PLAINTIFF JONNA WASHINGTON'S MOTION FOR SUMMARY JUDGEMENT**

Pursuant to Fed.R.Civ.P. 56(a), Plaintiff Jonna Washington ("Ms. Washington"), respectfully requests this Court grant summary judgment in her favor as to liability on her claims under the Real Estate Settlement Practices Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA"). There is no genuine issue of material fact that Defendant, Green Tree Loan Servicing, LLC ("Green Tree"), violated federal law by improperly handling Ms. Washington's loss mitigation application and collecting additional sums on the account through misrepresentations.

Under RESPA, Ms. Washington respectfully requests this Court enter summary judgment in her favor, schedule a trial on actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A), and award Ms. Washington statutory damages of $2,000 for Green Tree's pattern and practice of RESPA violations pursuant to § 2605(f)(1)(B). Ms. Washington further requests the Court award Ms. Washington reasonable attorneys' fees and costs pursuant to § 2605(f)(3) upon submission of a bill of fees and costs for the Court to review.

Under the FDCPA, Ms. Washington requests this Court enter summary judgment in her favor, and award her actual damages to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).

Under RESPA and the FDCPA, Ms. Washington respectfully requests this Court enter summary judgment in her favor as to liability, and schedule a trial to allow Ms. Washington to submit additional evidence of and testify as to actual damages including in the form of emotional distress suffered.

Respectfully Submitted,
DOUCET & ASSOCIATES CO., LPA


/s/ Timothy J. Cook
Timothy J. Cook (0093538)
Andrew J. Gerling (0087605)
Attorneys for Plaintiff Jonna Washington
700 Stonehenge Parkway, Suite 2B
Dublin, OH  43017
(614) 944-5219 PH
(818) 638-5548 FAX
Timothy@TroyDoucet.com
Andrew@TroyDoucet.com

## MEMORANDUM IN SUPPORT

I.    <u>INTRODUCTION</u>

Ms. Washington did everything she could to work with Green Tree to avoid foreclosure. In May 2014, Ms. Washington submitted a loss mitigation application to modify her home mortgage. Green Tree was obligated to follow strict procedures for completing and reviewing Ms. Washington's loss mitigation options pursuant to the RESPA and its implementing regulations, known as "Regulation X," 12 C.F.R. 1024.1-.41. However, Green Tree engaged in a nearly year-long campaign of carelessly and inattentively handling Ms. Washington's loss mitigation application (the "2014 Loss Mitigation Application").

Green Tree repeatedly violated the law by failing to properly process the application, which resulted in Green Tree adding unwarranted fees, interest, and escrow to Ms. Washington's loan and mortgage. Green Tree gave Ms. Washington incorrect instructions about how it would process her modification and provided improper paperwork. Based on Green Tree's own blunder in processing the modification, it pulled the modification offer from Ms. Washington following the death of her brother. Green Tree's written correspondence gave Ms. Washington certain timelines to meet in order to complete a modification of the mortgage and a formal assumption of her mother's note by January 3, 2015. When Ms. Washington informed Green Tree that she could not make a notary appointment on December 16, 2015 due to her brother's death the day before, Green Tree unexpectedly closed her modification and refused to reschedule.

Green Tree's failings ultimately resulted in a foreclosure sale of Ms. Washington's property ("the Property")[1], without properly processing her completed application. Ms. Washington's home sold at a foreclosure sale on March 5, 2015. Ms. Washington received notice to vacate her home and had to prepare to move her family. Only after filing this lawsuit did

---

[1] Ms. Washington's property ("the Property") is the property located at 1045 Church Ave., Cincinnati, OH 45246.

Defendants' unwind the sale. Defendants' conduct amounts to a pattern or practice of violating RESPA and other laws designed to protect consumers like Ms. Washington.

There is no genuine issue of material fact that Green Tree violated RESPA and the FDCPA. Under RESPA and the FDCPA, Ms. Washington respectfully requests this Court enter summary judgment in her favor as to liability, and schedule a trial to allow Ms. Washington to submit additional evidence of and testify as to actual damages, including emotional distress.

## II.   STATEMENT OF FACTS

Ms. Washington and her mother, Janet Washington, obtained title to the Property via general warranty deed for joint tenancy with the right of survivorship. Ex. A, General Warranty Deed. In 2002, Ms. Washington and Janet Washington signed a new mortgage as part of a refinance. Ex. B, Mortgage and Note. Ms. Washington and her mother were both listed as Borrowers. *Id*. On or about September 8, 2007, Janet Washington passed away. Ex. C; Ex. D, Affidavit of Jonna Washington, ¶ 5. Thereafter, Ms. Washington paid the mortgage for a number of years. Ex. D, ¶ 5. Unfortunately, Ms. Washington suffered a hardship that led Everbank to file a foreclosure on or about May 20, 2013.[2] Ex. E; Ex. D, ¶ 8. With the goal of saving her childhood home, Ms. Washington sent a loss mitigation application to Green Tree, which it received on or about May 9, 2014. Ex. F, 2014 Loss Mitigation Application; Ex. G, 1082[3]; Deposition of Green Tree's Corporate Representative Stewart Derrick ("Depo"), 62, 63. Ms. Washington submitted all documents requested in Green Tree's application. Ex. F; Ex. D, ¶ 8.

---

[2] Everbank, while not the servicer of the loan, was the party claiming that it was entitled to enforce the Note and Mortgage against Jonna Washington and her mother in the state foreclosure action. *See* Exhibit E.
[3] Green Tree produced the documents in Exhibit G to Ms. Washington. Exhibit G is Green Tree's Collection Comment List.

This was the first loss mitigation application submitted to Green Tree after it acquired servicing on or about May 1, 2014. Ex. G, 1081-1082[4]; Depo 58, 59; Ex. J.

Less than a month later, on May 22, 2014, Green Tree instructed foreclosure counsel to move for an order of sale. Depo, 85, 86; Ex. H. Despite receipt of all documents, Green Tree sent Ms. Washington a letter on May 22, 2014 outlining that it needed supplemental documentation by June 26, 2014 to complete her loss mitigation application. Ex. I. No foreclosure sale was scheduled prior to Green Tree's aforementioned instruction. Depo, 85, 86; Ex. H[5].

Curiously, on May 30, 2014, Green Tree sent Ms. Washington a letter indicating it had received a **complete** loss mitigation application and needed additional time to determine whether she was eligible for loss mitigation options. Ex. J; Ex. G, 1079. Green Tree did not receive any additional documents or information from Ms. Washington between submission of the May 9, 2014 application and its letter deeming the application complete. Depo, 71, 72; Ex. G, 1079-1082. However, Green Tree waited until June 27, 2014 to submit the "file" to Fannie Mae for a decision on the Modification. Ex. G, 1077.

On July 7, 2014, Green Tree sent a letter offering Ms. Washington a Temporary Payment Plan ("TPP") where she would make 3 payments to Green Tree. Ex. G, 1076; Ex. K[6]. The letter states, "After all trial period payments are timely made and you have met all of the applicable qualification requirements, your mortgage will then be permanently modified." Ex. K, p. 5. Green Tree approved Ms. Washington for a modification after all 3 TPP payments were timely made. Ex. D, ¶ 9; Ex. G, 1075. On or about October 16, 2014, Green Tree sent Ms. Washington a

---

[4] Green Tree's Collection Comment List at Ditech001082 states it received the loss mitigation application on or about May 9, 2014, at approximately 7.32.19 (7:32am CST).
[5] Ditech 000381-000386 are documents Green Tree produced in discovery. These specific documents are the Praecipe for Order of Sale filed on May 22, 2014.
[6] The letter is dated July 3, 2014. Green Tree's records indicate this letter was sent on July 7, 2014. The TPP terms are included on page 5 of Exhibit K.

letter including the final modification documents for her signature. Ex. G, 1074; Ex. L[7]. The letter instructed, "To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 11/14/2014." Ex. L. Ms. Washington returned the signed Modification to Green Tree on or about November 12, 2014. Ex. G, 1073[8]; Depo, 125. Green Tree does not dispute it received the executed documents it claimed were required to modify the loan. Ex. G, 1073; Ex. L.

Thereafter, Green Tree decided it needed an assumption, despite never sending Ms. Washington anything to complete such assumption. Ex. L; Depo, 126: 19-24, 127: 1-5, 146, 147. On December 3, 2014, Green Tree spoke with Ms. Washington to set up an appointment for December 16, 2014 at 4:30pm to complete an assumption of the loan. Depo, 130; Ex. G, 1071.

After scheduling the appointment, Green Tree sent Ms. Washington another letter with modification documents on or about December 5, 2014. Ex. M[9]; Depo, 133, 134. The letter stated "To accept this offer, you must sign and return both copies of the modification agreement to us in the enclosed prepaid envelope by January 3, 2015." Ex. M.; Depo, 148, 149. Ms. Washington and Green Tree's conversations and the December 5, 2014 letter establish she had until January 3, 2015 to complete the Modification and Assumption process. Ex. D, ¶ 19; Ex M.

On December 15, 2015, the day before the scheduled assumption, Ms. Washington's brother passed away. Ex. N; Ex. O; Ex. D, ¶ 16. Ms. Washington was her brother's power of attorney and closest relative, and was therefore required to make arrangements for his funeral. Ex. D, ¶ 16; Ex. O. On the morning of December 16, 2014, Ms. Washington called Green Tree to

---

[7] The letter attached as Exhibit L is dated October 15, 2014, but was sent on October 16, 2014, per Green Tree's records.
[8] Green Tree's Collection Comment List notes "Borrower has been sent final loan mod docs return by date is 11/14/14." Further, the notes indicate at 11/12/14, "Recvd signed final mod docs from customer/imaged/added to mod database for processing/put docs in mod drawer."
[9] The letter attached as Exhibit M is dated December 4, 2014. Green Tree's records show it was sent on December 5, 2014.

reschedule the appointment. Ex. G, 1071[10]; Ex. P, 20141216[11]; Depo, 143, 144; Ex. D, ¶ 17. The recorded audio makes it indisputable that Ms. Washington informed Green Tree of her brother's death and funeral prior to the appointment. Ex. P, 20141216. The Green Tree representative Ms. Washington spoke with transferred her call to Kendra Flood[12], and Ms. Washington left her a message, a recording of which is unavailable and has not been produced. *Id.*; Ex. D, ¶ 17. Ms. Flood did not return Ms. Washington's call, but instead, denied and closed Ms. Washington's application out of the modification process. Ex. P, 20141223-154122; Depo, 145.

Thereafter, Green Tree sent Ms. Washington a modification denial letter on or about December 18, 2014. Ex. Q[13]; Ex. G, 1070; Depo, 146, 147. The letter stated Ms. Washington "failed to provide the final executed modification documents within the required timeframe." Ex. Q. It is indisputable that Green Tree closed Ms. Washington's application despite Green Tree's express instruction that she had until January 3, 2015 to complete the process. Ex. M; Ex. Q. Green Tree closed out the modification offer and required Ms. Washington to submit an entirely new packet of information. Ex. G, 1070; Depo, 150. After closing out the modification offer, Green Tree instructed counsel to proceed with foreclosure two days before Christmas. Depo, 154, 155; Ex. G, 1069. Ms. Washington spoke with Green Tree representatives on December 23, 2014. Ex. P, 20141223-154122, 20141223-155632. During one conversation, Green Tree representative Kendra Flood told Ms. Washington her modification was closed even though Green Tree knew about Ms. Washington's brother's death. Ex. P, 20141223-154122. For the

---

[10] Green Tree's Collection Comment List notes on 12/15/14 at 8.24.12 (8:24am CST), "Jonna Washington cld needs to reschedule notary xfer to KNF for assistance."
[11] Exhibit P contains phone recordings maintained by Defendant Green Tree, which it produced as part of discovery. Exhibit P was filed manually under seal because it contains sensitive information.
[12] Kendra Flood was the single point of contact ("SPOC") regarding the loss mitigation process from May 2014 through December 2014. Depo 142: 19-24.
[13] The letter is dated December 17, 2014.

Court's convenience, these recordings produced by Green Tree in discovery were filed separately as exhibit P to this memorandum.

Ms. Washington sent in several other modification applications in January through March of 2015, but to no avail. Ex. G, 1056-1069; Depo, 157, 158, 170, 174. Despite submitting substantially the same documents that were previously approved, Green Tree and Everbank proceeded with foreclosure. Depo, 157-159; Ex. G, 1054-1066. Everbank, at Green Tree's direction, sold Ms. Washington's home at a foreclosure sale on or about March 5, 2015.[14] Ms. Washington filed this lawsuit, completed another modification and assumption agreement, and expended money and resources on litigation before Green Tree finally unwound the sale. Ex. T, April 19, 2016 Final Loan Modification and Assumption. Finally, on April 19, 2016, Ms. Washington received a final modification and assumption agreement with $134,688.34 as the principal balance, $13,215.93 more than the balance she would have received in the October 2014 modification. Ex. L; Ex. T; Depo, 185: 5-23.

There are no genuine issues of material fact regarding the above events. Green Tree did not properly assess Ms. Washington's loss mitigation application; required her to take additional steps; disregarded its own deadline; and caused Ms. Washington's home to be sold. As a result, Ms. Washington had to delay her education, suffering from sleepless nights, anxiety, stress, and uncertainty. Accordingly, Ms. Washington is entitled to summary judgment as a matter of law.

## III. ARGUMENT

### a. Standard for summary judgment.

The summary judgment standard under Fed.R.Civ.P. 56 provides in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[14] *See* Motion for Order to Vacate Sale, Confirmation Entry of Sale, and Distribution of Proceeds, Ex. R; Sherriff's Order to Vacate, Ex. S.

any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P 56(a). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact." *Boards of Trustees of Ohio Laborers' Fringe Ben. Programs v. World Wide Business Services Corp.*, S.D. Ohio No. 2:12–cv–1105, 2013 WL 5596967, *2 (Oct. 11, 2013) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Then, the burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Id.* (*quoting Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)).

Although "evidence 'must be viewed in the light most favorable' to the non-moving party," "summary judgment is appropriate if the opposing party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof[.]'" *Id.* at *1 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp.*, 477 U.S. at 322). "The 'mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party].'" *Id.* (*quoting Anderson*, 477 U.S. at 252). Given there are no genuine issues of material fact, Ms. Washington is entitled to summary judgment on her RESPA and FDCPA claims.

> **b. Green Tree is liable to Ms. Washington for violating the Real Estate Settlement Procedures Act.**

Congress enacted RESPA to insure that consumers were provided with greater and more timely information on the nature and costs of the settlement process and were protected from unnecessarily high settlement charges caused by certain abusive practices. 12 U.S.C. § 2601(a). "As a remedial statute, RESPA is construed broadly to effectuate its purposes. RESPA's provisions relating to loan servicing procedures should be construed liberally to serve the statute's remedial purpose." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir.2013) (internal citation and quotation marks omitted).

Under RESPA, a mortgage servicer must comply with specific procedures, including the Regulation X provisions governing how servicers must handle borrower applications for loss mitigation. 12 USC §2605(k)(1)(e); 12 C.F.R. § 1024.41(a). Here, Green Tree continuously failed to meet the requirements in handling Ms. Washington's loss mitigation application. Accordingly, Ms. Washington is entitled to summary judgment on her RESPA claim.

> **i. _Green Tree violated RESPA and Regulation X in its handling of Ms. Washington's May 2014 complete loss mitigation application._**

Regulation X sets forth procedures that require servicers to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application. *Id.* §1024.41 (b)(1). Diligence is defined as acting with both a "preserving effort to accomplish something undertaken," and "the attention and care required… in a given situation." Diligence, Black's Law Dictionary (10th ed. 2014). Servicers must use reasonable care and attentiveness so borrowers receive a fair opportunity to submit all necessary information. 12 C.F.R. § 1024.41(b)(1)-(2).

       1. *Green Tree failed to exercise reasonable diligence in obtaining documents and information to complete Ms. Washington's loss mitigation application.*

Green Tree clearly violated the due diligence requirements of Regulation X by requesting documents and/or information already in its possession. 12 C.F.R. § 1024.41(b)(1); *see also Joussett v. Bank of America*, N.A., 2016 WL 5848845, *6 (Oct. 6, 2016). Here, there is no dispute Green Tree received Ms. Washington's complete loss mitigation application on or about May 9, 2014. Ex. G, 1079-1082[15]; Ex. F; Depo, 70: 15-24, 71: 1-24, 72: 1-19. However, on or about May 22, 2014, Green Tree mysteriously sent Ms. Washington a letter instructing her to submit supplemental documentation by June 26, 2014. Ex. I. Green Tree's letter erroneously claimed Ms. Washington needed to submit a "List of Expenses" and "Most Recent Pay Subs Reflecting the Most Recent 30-Day's Earnings." *Id.* Green Tree already had such information.[16] Depo, 71, 72. Green Tree's May 22, 2014 letter asking for documents Green Tree already had in its possession violated Regulation X's due diligence requirements. 12 C.F.R. § 1024.41(b)(1); *see also Dionne, v. Fed. Natl. Mtge. Assn.*, 2016 WL 3264344, *6 (June 14, 2016).

       2. *Green Tree violated Regulation X when it moved for an order of sale on May 22, 2014, after receipt of Ms. Washington's complete loss mitigation application.*

RESPA and Regulation X prohibit a servicer from moving for foreclosure judgment or order of sale upon receipt of a borrower's complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(g).

As previously stated, Green Tree received Ms. Washington's complete loss mitigation application on or about May 9, 2014, more than 37 days prior to a foreclosure sale. Green Tree

---

[15] Green Tree's Collection Comment List indicates it received a loan modification application on May 9, 2014 from Ms. Washington. It considered her loan modification application complete on May 30, 2014. This was the first loss mitigation application Green Tree received from Ms. Washington after it acquired servicing rights on or about May 1, 2014. Depo, 42: 20-24, 43: 1-15.
[16] Green Tree's May 30th, 2014 letter already showed Ms. Washington's application was complete. Ex. J.

sent Ms. Washington a letter on May 30, 2014, stating, "[a]t this time Green Tree has determined that your application is complete and we are now evaluating your account for loan modification options." Ex. J, 1303. Still, Green Tree instructed foreclosure counsel to move for an order of sale of Ms. Washington's property, in violation of 12 C.F.R. § 1024.41(g). Ex. F; Ex. H; Ex J. Because Green Tree moved for foreclosure sale after receipt of Ms. Washington's complete loss mitigation application, when no sale was scheduled, it violated 12 C.F.R. § 1024.41(g).

Although Ms. Washington complied with all of Green Tree's requests for documentation, Green Tree did not comply with RESPA and Regulation X. Green Tree's violations in mishandling Ms. Washington's May 2014 loss mitigation application are just the beginning of Green Tree's RESPA and Regulation X violations. As discussed below, Green Tree continued to violate federal laws in regard to Ms. Washington's application. There is no genuine issue of material fact that Green Tree violated RESPA and Regulation X and is liable to Ms. Washington.

### ii. *__Green Tree violated RESPA and Regulation X by failing to provide timely notice to Ms. Washington under 12 C.F.R. § 1024.41(c)(1) after its receipt of her complete loss mitigation application.__*

Servicers must comply with specific procedures after receipt of a complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(c)(1).

> "Within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

12 C.F.R. § 1024.41 § (c)(1)(i)-(ii).

Green Tree violated RESPA and Regulation X when it failed to send Ms. Washington required notice within 30 days of receiving her complete loss mitigation application. 12 C.F.R. § 1024.41(c)(1). Here, Green Tree received Ms. Washington's complete loss mitigation application on or about May 9, 2014. Depo 71, 72; Ex. G, 1082; Ex. F; Ex. J. Because Green Tree received Ms. Washington's complete loss mitigation application on May 9, 2014, it had to provide Ms. Washington with the required notice by June 9, 2014. Green Tree did not send Ms. Washington notice until July 7, 2014. Ex. K[17]; Ex. G, 1076-1077. Thus, Green Tree did not send Ms. Washington the notice it was required to until almost 60 days after receiving her complete loss mitigation application. *See* 12 C.F.R. § 1024.41(c)(1).

It is indisputable that Green Tree violated RESPA and Regulation X when it sent Ms. Washington required notice almost 60 days after the receipt of her complete loss mitigation application. Green Tree's violations of federal law did not stop here, as it continued to violate RESPA and Regulation X in handling Ms. Washington's TPP.

### iii. *Green Tree failed to provide a reasonable period of time to fulfill its requirements for acceptance of the trial loan modification plan.*

A servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established by the servicer to have rejected the offer of a loss mitigation option. 12 C.F.R. § 1024.41(e)(2)(i); *see also* 12 C.F.R. § 1024.41(e)(1). Most importantly:

> "(ii) Trial Loan Modification Plan. A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, **shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.**"

12 C.F.R. § 1024.41(e)(2)(ii) (**emphasis added**).

---

[17] Green Tree sent the letter dated July 3, 2014 on July 7, 2014, according to Green Tree's Collection Comment List.

There is no dispute of material fact that upon Ms. Washington's completion of a TPP, Green Tree did not provide Ms. Washington a reasonable period of time to fulfil its additional requirements. It is undisputed that Green Tree received all of Ms. Washington's trial payments on time. Ex. K; Depo, 114, 115; Ex. G, 1075; Ex. D, ¶ 9. Ms. Washington completed her TPP in October 2014, and thereafter, Green Tree approved her for a final modification. Ex. G, 1075; Ex. L. Green Tree's documents state, "[b]orrower has successfully completed Trial Period and once [ ](sic) the final invoice has been assessed, we will proceed with Final Modification." Ex. G, 1075.

On or about October 16, 2014, Green Tree sent Ms. Washington a letter with instructions to complete the final modification agreement attached to it. Ex. L. The letter read, in relevant part, "To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 11/14/2014." *Id.*, Step 1. Green Tree received Ms. Washington's signed modification agreement before November 14, 2014. *See Id.*; Ex. G, 1073.[18]

After Ms. Washington signed and returned the Modification, Green Tree additionally required Ms. Washington to complete an assumption. Green Tree made contact with Ms. Washington's significant other, Ronald Jones, on December 3, 2014. Ex. G, 1072. Green Tree refused to speak with Ronald Jones about Ms. Washington's account, despite having prior authorization on file. *Id.*, 1071-1072; Depo, 98: 5-24. Later that day, Ms. Washington called Green Tree, and discussed the assumption needed to complete the modification. Ex. G, 1071. This was the first time Ms. Washington learned that Green Tree required her to do an assumption to complete Green Tree's additional requirements. Ex. D, ¶ 12, 13; *see* 12 C.F.R. § 1024.41(e)(2)(ii). The parties agreed to set up an appointment for the assumption at Ms. Washington's home on December 16, 2014, at 4:30pm. Ex. G, 1071, 12/03/14, 16.47.19.

---

[18] Green Tree's documents confirm it received Ms. Washington's signed modification agreement on November 12, 2014. Ex. G at 1073.

A day later, on December 4, 2014, Green Tree sent Ms. Washington a letter with another copy of the final loan modification documents that stated, "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 01/03/2015." Ex. M. As Green Tree is required by federal law under 12 C.F.R. § 1024.41(e)(2)(ii), it "provided a reasonable period of time [for Ms. Washington] to fulfill any remaining requirements, [the assumption], of the servicer, for acceptance of the trial loan modification plan beyond the deadline established." That deadline was January 3, 2015. Ex. M. Green Tree's corporate representative stated that the December 4, 2014 letter extended the deadline to January 3rd, 2015. Depo, 148, 149. Ms. Washington does not dispute that the January 3, 2015 deadline was a reasonable period of time to complete the assumption. Ex. D, ¶ 19.

On December 15, 2014, Ms. Washington's brother unexpectedly passed away. Ex. N; Ex. D, ¶ 16; Ex. O. Ms. Washington was her brother's closest relative and power of attorney, and as such, was required to meet with funeral directors on December 16, 2014, to arrange her brother's funeral. Ex. D, ¶ 16; Ex. O. Ms. Washington called Green Tree at 9:24am on December 16, 2014, to reschedule the notary appointment due to her brother's sudden death. Depo, 143, 144; Ex. G, 1071; Ex. P, 12/16/14. Green Tree received this information. Ex. G, 1071.

Despite Ms. Washington's diligence in notifying Green Tree of her brother's sudden death, Green Tree prematurely cut-off Ms. Washington's reasonable time period when it sent a modification denial letter to Ms. Washington on December 18, 2014. Ex. Q.  Green Tree violated 12 C.F.R. § 1024.41(e)(2)(ii) by failing to provide Ms. Washington a reasonable period of time (until January 3, 2015) to fulfill its additional requirements, the assumption. Due to Green Tree's failure to reschedule a simple appointment within the timeframe it set, Ms. Washington's home was sold at foreclosure sale. Ex. R; Ex. S.

> ### iv.  *Green Tree violated 12 C.F.R. § 1024.41(g) when it sold Ms. Washington's home at a foreclosure sale.*

RESPA and Regulation X provide that once a borrower "submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure, judgment or order of sale, or conduct a foreclosure sale, unless:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; **or**
> (3) The borrower fails to perform under an agreement on a loss mitigation option."

*Id.* § 1024.41(g)(1)-(3). (**emphasis added**).

As previously addressed, there is no dispute Ms. Washington submitted a complete loss mitigation application to Green Tree on May 9, 2014.

Sections 1024.41(g)(1) and (2) are inapplicable to Ms. Washington's May 9, 2014 loss mitigation application. Section 1024.41(g)(1) is inapplicable because Green Tree approved her for loss mitigation options and Section 1024.41(g)(2) is inapplicable because Ms. Washington accepted Green Tree's offer. Ex. K; Ex. D; Ex. L; Ex. G, 1073, 11/12/14, 16.00.57.

Ms. Washington performed under an agreement on a loss mitigation option in accordance with 12 C.F.R. § 1024.41(g)(3). Ms. Washington accepted Green Tree's TPP offer. Ex. K; Ex. G, 1073, 11/12/14, 16.00.57. Ms. Washington made all three TPP payments required under the plan. Ex. G, 1075, 10/13/14, 9.52.28. Ms. Washington submitted all the final loan modification documents Green Tree requested prior to November 14, 2014. Ex. L; Ex. G, 1073, 11/12/14, 15.55.10. Thereafter, Ms. Washington continued to work with Green Tree to meet its additional

requirements. Ex. M; Depo 143, 144; Ex. G, 1071; Ex. P. Green Tree set a deadline of January 3, 2015, by which it required Ms. Washington to complete an assumption. Ex. M. Instead of abiding by its own deadline, Green Tree closed out Ms. Washington's modification prior to the January 3, 2015 deadline it previously set. Ex. G at 1070; Ex. Q. Green Tree refused to allow Ms. Washington to reschedule a notary appointment before the expiration of its own deadline. Ex. G at 1069-1070; Ex. Q; Ex. P. Ms. Washington even called Green Tree again on December 23, 2014 to attempt to reschedule the notary appointment within the deadline. Ex. P at 12/23/14.

In conclusion, Green Tree did not comply with 12 C.F.R. § 1024.41(g) when it sold Ms. Washington's home at foreclosure sale. Ms. Washington performed under an agreement for loss mitigation. It was not until filing of this suit that Green Tree finally modified Ms. Washington's loan, with a principal balance of $13,215.93 above the modification offer she accepted in October 2014. Depo, 185: 5-23; Ex. L; Ex. T. Thus, there is no genuine issue of material fact that Green Tree is liable to Ms. Washington for violating 12 C.F.R. § 1024.41(g).

> ### v. *Green Tree's pattern or practice of violating RESPA and Regulation X entitles Ms. Washington to statutory damages, among other remedies.*

Green Tree's constant and numerous RESPA violations, as outlined in Sections b(i)-(b)(iv) of this memorandum show a pattern or practice of violating RESPA. Individuals are entitled to recover statutory damages from a servicer that engages in a pattern or practice of violating RESPA and/or Regulation X. 12 U.S.C. 2605(f)(1)(B); *see e.g., Ploog v. HomeSide Lending Inc.*, 209 F. Supp. 2d 863, at 868-69 (N.D. Ill. 2002) (five similar RESPA violations constitute pattern or practice, whereas only two violations generally do not).

Here, Green Tree violated RESPA from around May 9, 2014, through around April 2, 2015. Green Tree committed RESPA violations in its handling of Ms. Washington's loss

mitigation application, TPP, final modification, and in moving forward with the foreclosure sale of Ms. Washington's home. (*See infra* Sections b(i)-(iv)).

Accordingly, Ms. Washington respectfully requests this Court enter summary judgment in her favor on her RESPA claims, schedule a trial on actual damages, including emotional distress[19] pursuant to 12 U.S.C. § 2605(f)(1)(A), award Ms. Washington statutory damages of $2,000 for Green Tree's pattern and practice of RESPA violations pursuant to § 2605(f)(1)(B). *See Moore v. Mortg. Elec. Registrations Sys., Inc.* 848 F. Supp. 2d 107, 123 (D.N.H. 2012) (RESPA permits recovery of emotional distress damages (*citing Catalan v. GMAC Mortg. Corp.*, 629 F. 3d 676, 696 (7th Cir. 2011))). Ms. Washington further requests the Court award Ms. Washington reasonable attorneys' fees and costs pursuant to § 2605(f)(3) upon submission of a bill of fees and costs for the Court to review.

### c. *Green Tree is liable to Ms. Washington under the FDCPA.*

The FDCPA, 15 U.S.C. § 1962, *et seq.*, is a law enacted to protect consumers from debt collectors. 15 U.S.C. § 1692(g). The Sixth Circuit has noted that the FDCPA is "an extraordinarily broad statute" enacted to address what Congress "considered to be a widespread problem." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 2012). Moreover, the FDCPA is a strict liability statute, "meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Loan Mtg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir.2007)(internal citations omitted). To recover under the FDCPA, the plaintiff must prove:

> 1) The Plaintiff is a consumer;
> 2) The debt at issue is a consumer debt;
> 3) The defendant is a debt collector; and

---

[19] Ms. Washington has actual economic damages in excess of $13,000. Green Tree's corporate representative testified the difference between the principal balances on the loan modification Ms. Washington was offered in October 2014, and the loan modification she signed in April 2016 was greater than $13,000. Depo at p. 185, L5-23

4) The defendant has engaged in unlawful activity.

15 U.S.C. § 1692a-f. *See also Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

### i. *Ms. Washington is a Consumer and the debt at issue is a Consumer Debt.*

Under the FDCPA, a consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as any obligation **or alleged obligation to a consumer to pay money** arising out of a transaction in which the money or property is for personal, family, or household purposes. 15 U.S.C. § 1692a(5) (**emphasis added**). It is undisputed that Ms. Washington is a consumer and her mortgage was primarily for personal, family, or household purposes, i.e. a "debt" as defined by the FDCPA. Ex. A; Ex. B; Ex. C; Ex. D, ¶ 1-6. Green Tree even collected money from Ms. Washington before the modification was entered into, in the form of TPP payments.

### ii. *Green Tree is a Debt Collector under the FDCPA.*

Further, there is no genuine issue of material fact that Green Tree is a "debt collector" under the FDCPA. A "debt collector" is defined as any person who uses any instrumentality of commerce or the mails in any business to collect debts owed or due to another. 15 U.S.C. § 1692a(6). "Debt collector" includes any non-originating debt holder that has treated the debt as if it were in default since the time of acquisition. *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 362 (6th Cir.2012). "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is a creditor or debt collector depending on the default status of the debt at the time it was acquired." *Bridge*, 681 F.3d at 359. "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector,

depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id.* citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-8 (6th Cir.1996).

Green Tree was not the entity that initially extended the mortgage to Janet Washington and Ms. Washington. Ex. B. Further, Green Tree stated it bought the debt while it was allegedly in default. Depo, 43: 3-15. Green Tree also treated the debt as in default when it acquired the debt. *See, e.g.*, Ex. H; Ex. I; Ex H. Green Tree even sought to foreclose on Ms. Washington's home immediately after it allegedly acquired rights to the mortgage. Ex. H. Moreover, Green Tree's own correspondences indicate that it is a debt collector. *See e.g.*, Ex. I at 1302[20]. Because Green Tree began servicing the debt after it was in default, and used mail to collect the alleged debt, Green Tree is clearly a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6).

### iii. *Green Tree engaged in unlawful activity under 15 U.S.C. §§ 1692e.*

Section 1692e(10) prohibits debt collectors from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To analyze FDCPA claims, the 6th Circuit follows the "least sophisticated consumer test." *See e.g., Miller v. Javitch, Block & Rothbone,* 561 F.3d 588, 592 (6th Cir. 2009). "The least sophisticated consumer test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) citing *Miller*, 561 F.3d at 592. The standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir.1999). The standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P.*

---

[20] Green Tree's letters to Ms. Washington contain the language, "[t]his communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose."

*Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted). In addition to applying this standard, the statement must be materially false or misleading to violate 15 U.S.C. 1692e. *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 326 (6th Cir. 2012). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.* at 327.

Green Tree falsely misrepresented that Ms. Washington would be approved for a Modification after the completion of a TPP if she simply completed Modification documents. Ex. K; Ex. L; Ex. M. Nowhere in Green Tree's correspondences regarding the loan modification, the basis for collecting the three TPP payments and capitalizing the loan balance for past due amounts, does Green Tree mention the need for an assumption. *See* Ex. I; Ex. J; Ex. K; Ex. L; Ex M. To the contrary, Green Tree consistently references that the process simply requires the "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by []." Ex. L; Ex. M. By falsely representing Ms. Washington's prospects for a loan modification, Green Tree collected three additional payments on the loan, just to later refuse Ms. Washington for a Modification contrary to Green Tree's very own terms for acceptance. Ex. L; Ex. M; Ex. K; *see* Ex. D; Ex. G, 1075.

As explained in the facts section, Green Tree stated that Ms. Washington could return the Modification documents by November 14, 2014 to complete the loan modification process, and when she did Green Tree refused to honor the Modification until an assumption was complete. Thereafter, Green Tree later extended the deadline to complete the Modification and Assumption to January 3, 2015, just to later pull the modification offer on or about December 17, 2014. Ex. L; Ex. M; Ex. Q. These false representations following the completion of the TPP, led to an increased principal balance on the loan that Ms. Washington assumed in April, 2016. Depo, 185:

5-23. Accordingly, Green Tree's false representations to collect the TPP payments and later representations regarding due dates and the process for a Modification violated 15 U.S.C. 1692e(10). As such, there is no genuine issue of material fact that Green Tree violated the FDCPA. Ms. Washington requests this Court award her actual damages to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).

## IV.  <u>CONCLUSION</u>

There is no genuine dispute of material fact that Green Tree violated RESPA by improperly evaluating Ms. Washington for loss mitigation. Furthermore, Green Tree violated the FDCPA making false representations to Ms. Washington and using deceptive means to collect or attempt to collect additional sums on Ms. Washington's Mortgage Loan. Thus, Ms. Washington requests this Court grant summary judgment in her favor as to liability, and set a trial for damages.

Respectfully Submitted,
DOUCET & ASSOCIATES CO., LPA


/s/ Timothy J. Cook
Timothy J. Cook (0093538)
Andrew J. Gerling (0087605)
Attorneys for Plaintiff Jonna Washington
700 Stonehenge Parkway, Suite 2B
Dublin, OH  43017
(614) 944-5219 PH
(818) 638-5548 FAX
Timothy@TroyDoucet.com
Andrew@TroyDoucet.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2017, I caused this document to be electronically filed with the Clerk of Courts by using the ECF System, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, pursuant to Civ.R. 5(B)(2)(f):


David J. Demers, Esq.
Michelle L. Polly-Murphy, Esq.
Cooke Demers, LLC
260 Market Street, Suite F
New Albany, Ohio 43054
ddemers@cdgattorneys.com
mpolly-murphy@cdgattorneys.com
*Counsel for Everbank and Green Tree Servicing LLC*


/s/ Timothy J. Cook
Timothy J. Cook (0093538)