UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONNA WASHINGTON,
    Plaintiff,

vs.

GREEN TREE SERVICING LLC, et al.,
    Defendants.

Case No. 1:15-cv-354
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff Jonna Washington brings this action against defendants Green Tree Servicing

LLC[1] ("Green Tree") and EverBank under the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 1601 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*; and Ohio common law. This matter is before the Court on plaintiff's

motion for summary judgment (Doc. 52), defendants' response in opposition (Doc. 63), and

plaintiff's reply memorandum (Doc. 64). This matter is also before the Court on defendants'

motion for summary judgment (Doc. 54), plaintiff's response in opposition (Doc. 62),

defendants' reply memorandum (Doc. 66), and plaintiff's sur-reply (Doc. 67).

**I. Facts**

    In August 1998, plaintiff's mother Janet Washington executed a general warranty deed

granting to herself and plaintiff a joint tenancy with the right of survivorship to a home located at

1045 Church Avenue in Cincinnati, Ohio. (General Warranty Deed, Exh. A, Doc. 52-1). In June

2002, Janet Washington executed a note to Safeway Mortgage in the principal amount of

$101,000. (Note, Exh. B, Doc. 52-2 at 1-4). Plaintiff did not sign the note. (*See id.* at 3). Janet

Washington and plaintiff granted Safeway a mortgage on the property to secure the note.

---

[1] Defendants indicate that Green Tree is now known as Ditech Financial LLC. (Doc. 54 at 1). This report and
recommendation will use Green Tree to refer to both Green Tree and Ditech.

(Mortgage, Exh. B, Doc. 52-2 at 5-19). The mortgage listed Janet Washington and plaintiff as

borrowers. (*Id.* at 5). The mortgage contained the following relevant provision:

> 13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

(*Id.* at 14).

Janet Washington died in September 2007. (Certificate of Death for Janet Washington,

Exh. C, Doc. 52-3). Plaintiff attests that after her mother's death, she continued to make loan

payments for a number of years. (Affidavit of Jonna Washington, Exh. D, Doc. 52-4 at ¶ 6).

However, she missed some payments over the next four to five years. (Deposition of Jonna

Washington, Doc. 55-1 at 34).

In May 2013, defendant Everbank filed a foreclosure complaint against plaintiff in the

Hamilton County, Ohio Court of Common Pleas.[2] (Complaint for Foreclosure, Exh. E, Doc. 52-

5 at 1). The foreclosure complaint stated that plaintiff's mother was deceased and the note and

mortgage were in default. (*Id.* at 2). Because plaintiff was not a party to the promissory note,

defendant Everbank was "not seeking a personal judgment against [plaintiff] but [was] seeking

instead to enforce its security interest." (*Id.*). On May 1, 2014, servicing of the loan was

transferred from Everbank to Green Tree. (Doc. 56-1 at 44). On May 6, 2014, plaintiff

---

[2] The loan was assigned to Everbank in July 2008. (*See* Deposition of Stewart Derrick, Doc. 56-1 at 40-41). Citations to Mr. Derrick's deposition refer to the page numbers provided by CM/ECF. Mr. Derrick is the corporate litigation representative for Green Tree. (*Id.* at 17).

submitted an application for a loan modification. (Uniform Borrower Assistance Form, Exh. F, Doc. 52-6).

On May 22, 2014, Green Tree filed for an order of sale in the state court. (Praecipe for Order for Sale, Exh. H, Doc. 52-8). That same day Green Tree sent a letter addressed to plaintiff's mother indicating that the loan modification application was incomplete because it did not include a list of expenses and pay stubs reflecting the most recent 30 days' earnings. (Letter from Green Tree to Janet Washington dated May 22, 2014, Exh. I, Doc. 52-9). However, on May 30, 2014, Green Tree sent a letter addressed to plaintiff's mother indicating that the loan modification application was complete and was under review. (Letter from Green Tree to Janet Washington dated May 30, 2014, Exh. J, Doc. 52-10). On July 3, 2014, Green Tree sent a letter addressed to plaintiff's mother indicating that she was approved for an account modification trial period plan and directing her to make three payments to Green Tree under that plan from August to October 2014. (Letter from Green Tree to Janet Washington dated Jul. 3, 2014, Exh. K, Doc. 52-11 at 1, 5). The letter stated: "After all trial period payments are timely made and you have met all of the applicable qualification requirements, your mortgage will then be permanently modified." (*Id.* at 5).

On October 15, 2014, Green Tree sent a letter addressed to plaintiff indicating that she was eligible for a loan modification and directing her to sign and return an enclosed loan modification agreement by November 14, 2014. (Letter from Green Tree to Jonna Washington dated Oct. 15, 2014, Exh. L, Doc. 52-12 at 1). Green Tree received the signed loan modification agreement from plaintiff on November 12, 2014. (*See* Green Tree Servicing Collection Comment List, Exh. G, Doc. 52-7 at 21; Derrick Deposition, Doc. 56-1 at 126). However, Green Tree determined on November 14, 2014 that the loan modification agreement was invalid

because plaintiff had not assumed the loan. (*See* Exh. G, Doc. 52-7 at 21; Doc. 56-1 at 126-28).

On December 3, 2014, Green Tree contacted plaintiff and scheduled an assumption closing for

December 16, 2014 at 4:30 p.m. (*See* Exh. G, Doc. 52-7 at 19; Doc. 56-1 at 131). On December

4, 2014, Green Tree sent a letter addressed to plaintiff directing her to sign and return a new copy

of the loan modification agreement by January 3, 2015. (Letter from Green Tree to Jonna

Washington dated Dec. 4, 2014, Exh. M, Doc. 52-13 at 1).

   Plaintiff's brother died on December 15, 2014. (Certificate of Death for Broderick

Washington, Exh. N, Doc. 52-14). On December 16, 2014 at 8:24 a.m., plaintiff called Green

Tree, informed Green Tree of a death in the family, and asked for the assumption closing to be

postponed. (*See* Exh. G, Doc. 52-7 at 19; Audio Recording 20141216, Exh. P (filed under seal)).

On December 17, 2014, Green Tree sent plaintiff a letter indicating that she was denied a loan

modification because she "failed to provide the final executed modification documents within the

required time frame." (Letter from Green Tree to Jonna Washington dated Dec. 17, 2014, Exh.

Q, Doc. 52-17 at 1). On December 23, 2014, plaintiff called Green Tree to reschedule the

assumption closing and was told that her loan modification application had been closed because

she did not appear for the assumption closing scheduled for December 16. (*See* Audio

Recording 20141223-154122, Exh. P (filed under seal)). Plaintiff was told she would have to

start the process over again with a new loan modification application. (*See id.*).

   Plaintiff submitted paperwork for a new loan modification application. (*See* Exh. G,

Doc. 52-7 at 9-16; Doc. 56-1 at 158-60, 170-71). Green Tree indicated it did not receive all the

required paperwork by the February 22, 2015 deadline and denied a modification. (*See* Exh. G,

Doc. 52-7 at 8-9; Doc. 56-1 at 178-81). Defendants proceeded with foreclosure proceedings and

the home was sold at a foreclosure sale on March 5, 2015. (*See* Order to Vacate, Exh. S, Doc.

52-19). After plaintiff filed this lawsuit, defendants unwound the foreclosure sale. (*See* Motion for Order to Vacate Sale, Exh. R, Doc. 52-18). On April 19, 2016, the parties closed on the loan modification and assumption, which indicated a principal balance of $134,688.34. (*See* Closing Disclosure, Exh. T, Doc. 52-20 at 3). This principal balance was over $13,000 more than the principal balance would have been under the October 2014 loan modification agreement. (*See* Doc. 56-1 at 186).

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475

U.S. at 587.

## III. Resolution

### A. RESPA

"RESPA is a consumer protection statute that regulates the real estate settlement

process." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C.

§ 2601(a)). In enacting the RESPA, Congress intended "to insure that consumers throughout the

Nation are provided with greater and more timely information on the nature and costs of the

settlement process and are protected from unnecessarily high settlement charges caused by

certain abusive practices that have developed in some areas of the country." 12 U.S.C. §

2601(a). "Although the 'settlement process' targeted by the statute was originally limited to the

negotiation and execution of mortgage contracts, the scope of the statute's provisions was

expanded in 1990 to encompass loan servicing." *Marais v. Chase Home Fin. LLC*, 736 F.3d

711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th

Cir. 2012)). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Id.*

"The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act

('Regulation X') is a Consumer Financial Protection Bureau regulation promulgated pursuant to

section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and the [RESPA], 12 U.S.C. §

2601 *et seq.*" *Cooper v. Fay Servicing, LLC*, 115 F. Supp.3d 900, 903 n.6 (S.D. Ohio 2015). "A

borrower may enforce the provisions of [Regulation X] pursuant to section 6(f) of RESPA (12

U.S.C. 2605(f)). 12 C.F.R. § 1024.41(a)." *Id.* "Whoever fails to comply with any provision of

[the RESPA] shall be liable to the borrower for each such failure[.]" 12 US.C. § 2605(f). "Thus,

6

a defendant's liability in a civil action under RESPA is limited to borrowers." *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp.2d 1203, 1207 (M.D. Fla. 2012).

Regulation X imposes certain obligations on a loan servicer. As relevant here, under Regulation X a loan servicer must:

- exercise reasonable diligence in obtaining documents and information to complete a borrower's loss mitigation application.[3] 12 C.F.R. § 1024.41(b)(1).

- not move for an order of sale if a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(g).

- provide timely notice of loss mitigation options it will offer the borrower. 12 C.F.R. § 1024.41(c)(1)(ii).

- provide a reasonable period of time to fulfill its requirements for acceptance of a trial loan modification plan.[4] 12 C.F.R. § 1024.41(e)(2)(ii).

Plaintiff argues that defendant Green Tree violated all these provisions of Regulation X. (*See* Doc. 52 at 10-18).[5] Defendants argue that plaintiff does not have standing to bring claims under Regulation X and the RESPA because she was not a "borrower" for purposes of the RESPA or Regulation X. (*See* Doc. 54 at 7-9; Doc. 63 at 1-2, 5-6).

---

[3] "A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016). "Loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31.

[4] As part of the Emergency Economic Stabilization Act of 2008, Congress provided for the Home Affordable Mortgage Program to encourage mortgage servicers to minimize foreclosures. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing 12 U.S.C. § 5219(a)). If a loan servicer determined a borrower qualified for a loan modification under this program, "the servicer implemented a Trial Period Plan (TPP) under the new loan repayment terms it formulated." *Id.* at 557. "After the trial period, if the borrower complied with all terms of the TPP Agreement—including making all required payments and providing all required documentation—and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification." *Id.*

[5] Citations to this document refer to the page numbers provided by CM/ECF.

Neither RESPA nor Regulation X define the term "borrower." *See* 12 U.S.C. § 2602; 12 C.F.R. §§ 1024.2, 1024.31. In arguing that plaintiff does not have standing as a borrower, defendant relies on this Court's decision in *Cooper*. In *Cooper*, a husband and wife signed the mortgage granting the security interest in their home, but only the husband signed the promissory note. 115 F. Supp.3d at 902. The husband and wife each raised claims that their loan servicer had violated the RESPA and Regulation X in handling their account. This Court permitted the husband's claims to proceed but found that the wife did not have standing to bring claims under the RESPA and Regulation X because she "did not sign the note or loan [modification application]." *Id.* at 909.[6]

In arguing that she does have standing as a borrower, plaintiff relies on *Frank v. J.P. Morgan Chase Bank, N.A.*, No. 15-cv-5811, 2016 WL 3055901 (N.D. Cal. May 31, 2016). In *Frank*, a husband and wife signed the deed of trust granting the security interest in their home, but only the husband signed the promissory note. *Id.* at *1. After the husband became ill, the husband and wife submitted a loan modification application. Before the servicer responded to that application, the husband died. *Id.* Thereafter, the wife unsuccessfully attempted to assume the loan and communicate with the servicer concerning the loan modification application. *Id.* at *1-2. Eventually, the wife filed suit raising a claim under the RESPA and Regulation X. The Northern District of California found that the wife had standing to sue under the RESPA even though she had not signed the note because "the Deed of Trust (which calls her a 'Borrower') obligates her to certain other conditions" such as compliance "with the instrument's non-payment covenants (*e.g.* property and mortgage insurance, occupancy, preservation and

---

[6] The Court notes that other courts have also found a plaintiff lacks standing under the RESPA if the plaintiff has not signed the note. *See, e.g.*, *Nelson v. Nationstar Mortg. LLC*, No. 7:16-cv-307, 2017 WL 1167230, at *3 (E.D. N.C. Mar. 28, 2017) (collecting cases). As will be explained below, these cases are distinguishable because they did not consider the CFPB's recent guidance concerning the meaning of "borrower" for RESPA purposes.

maintenance, and other covenants)." *Id.* at *5. The court concluded that "[t]he threat of default, possible foreclosure, and these additional covenants surely obligate her under the mortgage." *Id.*

Here, the Court concludes that the circumstances of this case are more like *Frank* than *Cooper* and that plaintiff has standing to raise a RESPA claim. Similar to the widow in *Frank*, 2016 WL 3055901, at *2, plaintiff here became the sole title owner of the property and thus a successor in interest in the property upon the death of her mother. Plaintiff is named as a "borrower" under the mortgage and, like the widow in *Frank*, was obligated under the mortgage to comply with the non-payment covenants such as providing property insurance, occupancy, preservation, and other covenants. *See id.* at *5; (Exh. B, Doc. 52-2 at 5-19). Similarly, the threat of default, possible foreclosure, and the additional covenants obligated plaintiff under the mortgage. *See Frank*, 2016 WL 3055901, at *5. In contrast, *Cooper* did not involve a situation where the death of the co-borrower under the mortgage gave rise to specific obligations under the mortgage for the successor in interest. Nor did the co-borrower wife in *Cooper* sign the loan modification application in an attempt at loss mitigation as did the widow in *Frank* and plaintiff in the instant case.

Following the death of plaintiff's mother, defendants treated plaintiff as a borrower for all intents and purposes. Plaintiff continued to pay on the loan and defendants accepted the mortgage payments for years. Plaintiff submitted a loan modification application and defendant Green Tree treated her as a borrower in its communications with her. Specifically, even though defendant Green Tree knew plaintiff's mother was deceased, it continued to send letters addressed to plaintiff's mother concerning the loan modification application that *plaintiff* submitted. (*See* Exh. E, Doc. 52-5 at 2; Exh. I, Doc. 52-9; Exh. J, Doc. 52-10; Exh. K, Doc. 52-11). After plaintiff made the required payments under the trial period plan, defendant Green

Tree sent letters directly to plaintiff and represented to plaintiff that as the borrower, her loan would be modified if she signed and returned the modification agreement. (*See* Exh. L, Doc. 52-12; Exh. M, Doc. 52-13). Further, after plaintiff asked for the assumption closing to be postponed, defendant Green Tree informed plaintiff that she was not eligible for a modification of *her* mortgage loan, instructed her to pay the total past due amount, and warned her that "[i]f you are unable to pay *your mortgage* or bring it current, Green Tree will consider pursuing all available legal remedies up to and including the commencement of foreclosure proceedings." (Exh. Q, Doc. 52-17 at 1) (emphasis added). In short, after the death of plaintiff's mother, defendants accepted mortgage payments from plaintiff for seven years and treated plaintiff as if she was a borrower standing in the shoes of her mother.

Further, like the widow in *Frank* and unlike the wife in *Cooper* whose husband was still living, plaintiff is her deceased mother's successor in interest on the loan. The Court finds plaintiff's status as a successor in interest to be particularly compelling in light of recent amendments to Regulation X by the Consumer Financial Protection Bureau ("CFPB") that clarify the term "borrower" for purposes of RESPA. In these October 2016 amendments, which become effective in April 2018, "[a] confirmed successor in interest shall be considered a borrower for purposes of [12 C.F.R. § 1024.41]." Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 FR 72160, 72370 (Oct. 19, 2016). The amendments define a successor in interest in relevant part as "a person to whom an ownership interest in a property securing a mortgage loan . . . is transferred from a borrower, provided that the transfer is . . . [a] transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety[.]" *Id.* (amending 12 C.F.R. § 1024.31). Under these amendments, a successor in interest is

"confirmed" when "a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan." *Id.* (amending 12 C.F.R. § 1024.31). In enacting these amendments, the CFPB explained its rationale for considering confirmed successors in interest to be borrowers:

> Although a confirmed successor in interest will not necessarily have assumed the mortgage loan obligation under State law, the successor in interest, after the transfer of ownership of the property, will have stepped into the shoes of the transferor borrower for many purposes. . . . [T]he successor in interest will typically need to make payments on the loan in order to avoid foreclosure on the property. The successor in interest's ability to sell, encumber, or make improvements to the property will also be limited by the lien securing the loan. In other words, the property rights of the confirmed successor in interest, like those of the transferor borrower, are subject to the mortgage loan.

*Id.* at 72183.

Even though these amendments will not become effective until April 2018 and were not in effect at the time of defendants' conduct at issue here, the Court finds that these amendments and the CFPB's explanation of their purpose are persuasive authority. *See In re Carter*, 553 F.3d 979, 987-88 (6th Cir. 2009) ("[T]he views of an agency charged with applying a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). *See also Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004) (finding proposed regulations by Secretary of Labor, while not binding, to be persuasive authority); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 850 (D.S.C. 2015) (proposed regulations of Health and Human Services provide persuasive authority to support a finding that defendant "administers health programs or activities" within the meaning of the statute); *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 985 n.1 (N.D. Ind. 2010) (finding proposed regulations issued by EEOC identifying "cancer" as an example of "impairments that are episodic or in remission" and therefore a "disability" to be a useful tool in

gleaning the intended meaning of the ADAAA amendments); *Galati v. D & R Excavating, Inc.,* No. CV04-1684, 2006 WL 839057, at *3 (D. Ariz. Mar. 30, 2006) (proposed Treasury regulations are at least persuasive authority for interpreting the COBRA provisions of ERISA) (and numerous cases cited therein). The amendment to Regulation X supports the conclusion reached in *Frank* that the widow/successor in interest had standing to bring claims under the RESPA and Regulation X. So too, this Court concludes that plaintiff here, as her deceased mother's successor in interest, has standing to bring her claims under the RESPA and Regulation X as a borrower.

Having determined that plaintiff has standing to bring her RESPA claim, the Court must next determine if there is a genuine issue of material fact as to whether defendant Green Tree violated Regulation X. Plaintiff has submitted evidence that in violation of Regulation X, defendant Green Tree: (1) failed to exercise reasonable diligence in obtaining documents and information to complete her loss mitigation application; (2) moved for an order of sale even though it had received plaintiff's complete application more than 37 days before a foreclosure sale; (3) did not provide timely notice of the loss mitigation options it would offer plaintiff; (4) did not provide a reasonable period of time to fulfill its requirements for acceptance of a trial loan modification plan; and (5) sold plaintiff's home at a foreclosure sale even though plaintiff performed under an agreement on a loss mitigation option. (*See* Doc. 52 at 11-18). (*See also* Exh. F, Doc. 52-6; Exh. G, Doc. 52-7 at 19, 21; Exh. H, Doc. 52-8; Exh. I, Doc. 52-9; Exh. J, Doc. 52-10; Exh. K, Doc. 52-11; Exh. L, Doc. 52-12; Exh. M, Doc. 52-13; Audio Recording 20141216, Exh. P; Exh. Q, Doc. 52-17; Exh. R, Doc. 52-18; Exh. S, Doc. 52-19; Doc. 56-1 at 126, 131). Relying solely on their argument that plaintiff lacks standing, defendants have not

presented any evidence to rebut plaintiff's evidence that defendant Green Tree violated the

RESPA and Regulation X. (*See* Doc. 63 at 1-6). The Court will consider each violation in turn.

*Green Tree failed to exercise reasonable diligence in violation of 12 C.F.R. § 1024.41(b)(1).*

Plaintiff argues that Green Tree failed to exercise reasonable diligence by sending a letter

on May 22, 2014 stating that plaintiff's loan modification application was incomplete before

sending a letter on May 30, 2014 stating that plaintiff's application was complete. (Doc. 52 at

11). Plaintiff has presented evidence that her application was complete when submitted on May

6, 2014 and that she did not submit any additional information after the May 22 letter before

Green Tree declared her application to be complete on May 30, 2014. (*See* Exh. F, Doc. 52-6;

Exh. G, Doc. 52-7 at 27; Exh. I, Doc. 52-9; Exh. J, Doc. 52-10).

"A servicer shall exercise reasonable diligence in obtaining documents and information

to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). To comply with this

diligence requirement, a servicer must promptly review a loss mitigation application for

completeness and "[n]otify the borrower in writing within 5 days . . . after receiving the loss

mitigation application that the servicer . . . has determined that the loss mitigation application is

either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(A)-(B).

Plaintiff relies on *Dionne v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-56, 2016 WL 3264344

(D.N.H. Jun. 14, 2016), for the proposition that defendant Green Tree's request for documents it

already had in its possession violated the reasonable diligence requirement of § 1024.41(b)(1).

(Doc. 52 at 11). In the context of a motion to dismiss for failure to state a claim, the court in

*Dionne* found that the plaintiffs set forth a plausible claim that a servicer did not exercise

reasonable diligence under § 1024.41(b)(1) "by repeatedly requesting documents they had

already submitted multiple times, and by requesting documents even when it had previously told the [plaintiffs] that it did not need anything further from them." 2016 WL 3264344, at *6.

In *Paz v. Seterus, Inc.*, No. 14-cv-62513, 2016 WL 3948053, at *2 (S.D. Fla. Apr. 28, 2016), a borrower submitted a loss mitigation application in July 2014. The Southern District of Florida found that the servicer's initial response to the application on July 8, 2014 was defective because while it stated that the borrower's application was incomplete, it failed to identify any documents that were missing. *See id.* at *3. The court found that later letters sent on August 5, 6, and 22, 2014 failed to cure the deficiency in the initial notice. *See id.* at *3-4. While the August 6 letter clearly informed the borrower "that certain documents were missing, that letter was followed shortly by the August 22 letter that again indicated that no further documents were needed." *Id.* at *4. In granting summary judgment to the borrower, the court held that "[b]ecause of the these deficiencies . . . [defendant's] handling of [plaintiff's] application generally also fell far short of paragraph (b)(1)'s requirement that a servicer 'exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.'" *Id.* at *5 (quoting 12 C.F.R. § 1024.41(b)(1)).

Here, it is undisputed that plaintiff submitted a loan modification application on May 6, 2014 and defendant Green Tree received it on May 9, 2014. (*See* Exh. F, Doc. 52-6; Exh. G, Doc. 52-7 at 29-30; Doc. 56-1 at 66-67). Defendant Green Tree first sent a letter to plaintiff concerning the application on May 22, 2014. (*See* Exh. I, Doc. 52-9). Thus, defendant Green Tree failed to show reasonable diligence inasmuch as it did not comply with Regulation X's requirement that a servicer "[n]otify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer . . . has determined that the loss mitigation application is either complete or incomplete." 12 C.F.R. § 1024.41(b)(1) and (b)(2)(i)(B).

Further, similar to *Paz*, defendant Green Tree sent plaintiff a letter on May 22, 2014 stating that her application was incomplete, only to send a letter on May 30, 2014 stating the application was complete. (*See* Exh. I, Doc. 52-9; Exh. J, Doc. 52-10). Because of these deficiencies in Green Tree's handling of the loan modification application, Green Tree failed to comply with § 1024.41(b)(1)'s reasonable diligence requirement. *See Paz*, 2016 WL 3948053, at *5. Green Tree has failed to submit any evidence disputing these facts to establish a genuine issue for trial concerning its failure to exercise reasonable diligence in handling plaintiff's loan modification application. Thus, summary judgment for plaintiff is appropriate as to this violation of Regulation X.

*The May 22, 2014 motion for an order of sale violated 12 C.F.R. § 1024.41(g)*.

A servicer may not move for an order of sale "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(g).

Here, a foreclosure complaint was filed against plaintiff in May 2013. (Exh. E, Doc. 52-5 at 1). Plaintiff has presented evidence that she submitted a complete loss mitigation application on May 6, 2014 and defendant Green Tree received it on May 9, 2014. (*See* Exh. F, Doc. 52-6; Exh. G, Doc. 52-7 at 27-30; Doc. 56-1 at 66-67, 72-73). Green Tree initially informed plaintiff that the application was incomplete on May 22, 2014, but advised her the application was complete on May 30, 2014. (*See* Exh. I, Doc. 52-9; Exh. J, Doc. 52-10). However, plaintiff has presented evidence that her application was complete when submitted on May 6, 2014 and that she did not submit any additional information after the May 22 letter before Green Tree declared her application to be complete on May 30, 2014. (*See* Exh. F, Doc. 52-6; Exh. G, Doc. 52-7 at

27; Exh. I, Doc. 52-9; Exh. J, Doc. 52-10). Thus, even though Green Tree received plaintiff's complete loss mitigation application, it moved for an order of sale on May 22, 2014 in violation of § 1024.41(g). (Exh. H, Doc. 52-8). Because defendants have not presented any argument or evidence to show there are genuine issues of material fact concerning this violation of Regulation X, summary judgment for plaintiff is appropriate as to this violation.

*Green Tree violated § 1024.41(c)(1) by not providing timely notice of loss mitigation options.*

"[W]ithin 30 days of receiving [a] complete loss mitigation application, a servicer shall . . . [p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1)(ii).

Here, defendant Green Tree received plaintiff's complete loss mitigation application on May 9, 2014. (*See* Exh. F, Doc. 52-6; Exh. G, Doc. 52-7 at 27-30; Doc. 56-1 at 66-67, 72-73). However, Green Tree did not send plaintiff a letter with notice of available loss mitigation options until July 3, 2014. (Exh. K, Doc. 52-11). This notice was sent more than 30 days after Green Tree's receipt of plaintiff's complete loss mitigation application in violation of § 1024.41(c)(1)(ii). Because defendants have not presented any argument or evidence to show that there are genuine issues of material fact concerning this violation of Regulation X, summary judgment for plaintiff is appropriate as to this violation.

*Green Tree violated § 1024.41(e)(2) by not providing sufficient time to accept an offer of a loss mitigation option.*

"[I]f a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option." 12 C.F.R. § 1024.41(e)(1). A borrower who submits the required payments under a

trial period plan "shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section." 12 C.F.R. § 1024.41(e)(2)(ii).

Here, Green Tree informed plaintiff by telephone on December 3, 2014 that she needed to assume the loan to complete the modification process. (*See* Exh. G, Doc. 52-7 at 19; Audio Recording, Exh. E to defendants' motion for summary judgment (filed under seal); Doc. 56-1 at 131). During that phone call, the parties scheduled the assumption closing with a notary public for December 16, 2014. (*See id.*). On December 4, 2014, Green Tree sent a letter to plaintiff informing her that she had until January 3, 2015 to accept the modification offer by returning the modification agreement and any additional documents that had to be notarized. (Exh. M, Doc. 52-13). Plaintiff's brother died on December 15, 2014. (Exh. N, Doc. 52-14). Plaintiff called Green Tree on December 16, 2014, informed Green Tree of a death in the family, and asked for the assumption closing to be postponed. (*See* Exh. G, Doc. 52-7 at 19; Audio Recording 20141216, Exh. P). On December 17, 2014, Green Tree sent plaintiff a letter indicating that she was denied a loan modification because she "failed to provide the final executed modification documents within the required time frame." (Exh. Q, Doc. 52-17). Thus, Green Tree offered plaintiff a loss mitigation option on December 4, 2014 and denied plaintiff the offered loan modification only 13 days later in violation of Green Tree's own January 3, 2015 deadline and the 14-day acceptance requirement of § 1024.41(e)(1). Further, no reasonable jury could find that Green Tree complied with § 1024.41(e)(2)(ii) when it denied plaintiff's loan modification on December 17, 2014 for failing to complete Green Tree's remaining requirements when Green Tree previously told plaintiff she had until January 3, 2015 to complete those requirements. (*See* Exh. M, Doc. 52-13; Exh. Q, Doc. 52-17).

Defendant Green Tree asserts that it made ten attempts to contact plaintiff between October 22 and December 2, 2014 with no success. (Doc. 63 at 2). Defendant argues that it was plaintiff's "failure to timely communicate" that "was the barrier to consummating the loan modification process." (*Id.* at 3; *see* Exh. G, Doc. 52-7 at 19-22). Accepting that Green Tree initially encountered difficulties in contacting plaintiff to schedule the assumption closing, this fact is irrelevant. Once Green Tree succeeded in contacting plaintiff and scheduled the assumption closing, it sent plaintiff a new modification offer and told her she had until January 3, 2015 to complete the requirements for accepting it. Any problems Green Tree had contacting plaintiff before making this offer are not relevant to Green Tree's subsequent violation of § 1024.41(e)(1) and (2)(ii) after it made the offer. Thus, because defendants have failed to show that there are genuine issues of material fact concerning this violation of Regulation X, summary judgment for plaintiff is appropriate as to this violation.

*Green Tree violated § 1024.41(g) by selling plaintiff's home at a foreclosure sale.*

A servicer may not conduct a foreclosure sale "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(g). The only exceptions to this rule are if: (1) the servicer has sent the borrower a notice that she is not eligible for any loss mitigation options; (2) the borrower rejects all loss mitigation options offered; or (3) the borrower fails to perform under an agreement on a loss mitigation option. 12 C.F.R. § 1024.41(g)(1)-(3).

The first exception is not at issue because Green Tree notified plaintiff on July 3, 2014 that she would be eligible for a loan modification is she completed a trial period plan. (*See* Exh. K, Doc. 52-11). The second exception is not at issue because plaintiff accepted the offer of a

loan modification by making the required payments under the trial period plan and submitting a loan modification agreement on November 12, 2014. (*See* Exh. G, Doc. 52-7 at 21; Exh. L, Doc. 52-12; Doc. 56-1 at 126). The third exception is also not applicable because plaintiff did not fail to perform under an agreement on a loss mitigation option. Although plaintiff did not complete the assumption closing before a notary on December 16, 2014 because of her brother's sudden death, Green Tree had instructed her that she had until January 3, 2015 to return the documents that needed to be notarized. (Exh. M, Doc. 52-13). Plaintiff attempted to reschedule the assumption closing before the January 3, 2015 deadline. (*See* Exh. G, Doc. 52-7 at 19; Audio Recording 20141216, Exh. P; Audio Recording 20141223-154122, Exh. P). Despite plaintiff's efforts to complete her performance under the agreement before Green Tree's deadline, Green Tree unilaterally denied her a loan modification on December 17, 2014 for failure to complete Green Tree's requirements before the deadline for completing those requirements had expired. Thus, the failure of plaintiff to complete her performance under the agreement was attributable to Green Tree's premature denial of her modification and the third exception is not applicable. Thus, under these circumstances, Green Tree violated § 1024.41(g) by proceeding to a foreclosure sale. Because defendants have failed to identify any evidence showing that there are genuine issues of material fact concerning this violation of Regulation X, summary judgment for plaintiff is appropriate as to this violation.

Based on the foregoing, plaintiff's motion for summary judgment should be granted as to her RESPA claim and defendants' motion for summary judgment should be denied as to plaintiff's RESPA claim. This matter should proceed to trial to determine the amount of plaintiff's damages.

**B. FDCPA**

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" violates the FDCPA. 15 U.S.C. § 1692e(10).

Plaintiff argues that defendant Green Tree violated § 1692e(10) by falsely representing that she would be approved for a loan modification after the completion of the trial period plan "if she simply completed Modification documents." (Doc. 52 at 21). According to plaintiff, "Green Tree stated that [she] could return the Modification documents by November 14, 2014 to complete the loan modification process, and when she did Green Tree refused to honor the Modification until an assumption was complete." (*Id.*). Plaintiff contends that defendant Green Tree further violated the FDCPA by falsely representing that she had until January 3, 2015 to complete the modification and assumption "just to later pull the modification offer on or about December 17, 2014." (*Id.*).

Defendants argue that plaintiff lacks standing to bring this claim because as a non-signatory to the note, she was not a "consumer" for purposes of the FDCPA. (Doc. 54 at 9-10). Defendants further argue that even if plaintiff is a consumer, defendants did not violate the FDCPA because they "did not attempt to collect a debt from her, never sent her any harassing emails or letters threatening collection activity if she did not make the mortgage payments, and never sent her any letters telling her that she owed the debt." (*Id.* at 10).

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money,

property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). *See also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) ("This court, in determining whether a statement qualifies as misleading, employs an objective, 'least-sophisticated-consumer' test."). "This standard 'protects naïve consumers while preventing liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008)).

Here, plaintiff has standing to bring her claim under the FDCPA. In arguing that plaintiff does not have standing, defendants contend that plaintiff must show she is a "consumer" under the Sixth Circuit's decision in *Wallace v. Washington Mut. Bank, F.A.*, 686 F.3d 323 (6th Cir. 2012). In *Wallace*, the Sixth Circuit stated that "[i]n order to establish a claim under § 1692e: (1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise[] out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." 686 F.3d at 326 (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp.2d 914, 926 (N.D. Ohio 2009)). However, the Sixth Circuit found that "[o]nly the fourth element is at issue" in *Wallace* and did not address the issue of whether a non-consumer has

standing to sue under § 1692e. *Id.* Thus, the statement in *Wallace* that a plaintiff "must be a consumer" to bring a claim under § 1692e is dicta.

In contrast to this dicta in *Wallace*, the Sixth Circuit squarely addressed the issue of standing under § 1692e in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003). In *Montgomery*, the Sixth Circuit considered the issue of standing under three separate prongs of the FDCPA: 15 U.S.C. §§ 1692c, 1692d, and 1692e. *Id.* at 696-97. The Sixth Circuit held that § 1692c is the only one of the three that limits standing to consumers. *Id.* ("[O]nly a 'consumer' has standing to sue for violations under 15 U.S.C. § 1692c.") (quoting *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 n.1 (6th Cir. 1994) (*en banc*)). In contrast, the Sixth Circuit concluded that "*any aggrieved party* may bring an action under § 1692e," not just a "consumer." *Id.* at 697 (emphasis in original) (quoting *Wright*, 22 F.3d at 649-50). Thus, even if plaintiff is not a consumer, she has standing to bring an action against defendants under § 1692e.

Further, even if plaintiff were required to be a consumer to bring an action under § 1692e, she would still have standing. Although plaintiff was not personally obligated to pay the mortgage loan at the time she received the communications at issue from defendants, consumers for purposes of the FDCPA also include those who are "allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The October 15, 2014 letter from Green Tree addressed to plaintiff stated that if she complied with the trial period plan, "we will modify *your* mortgage loan and waive all prior late charges that remain unpaid." (Exh. L, Doc. 52-12 at 1) (emphasis added). Green Tree further stated that the enclosed modification agreement "reflects the proposed terms of *your* modified mortgage." (*Id.*) (emphasis added). Green Tree also instructed plaintiff "to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, *your* loan may

not be modified." (*Id.*) (underlining retained) (emphasis added). This letter concluded with the following statement: "This communication is from a debt collector. It is an attempt to collect a debt, and any information will be used for that purpose." (*Id.* at 3). The December 4, 2014 letter addressed to plaintiff contained identical language concerning the modification of "your mortgage loan." (Exh. M, Doc. 52-13 at 1). The December 17, 2014 letter addressed to plaintiff informed her that she was not eligible for a modification of *her* mortgage loan, instructed her to pay the total past due amount, and warned her that "[i]f you are unable to pay *your mortgage* or bring it current, Green Tree will consider pursuing all available legal remedies up to and including the commencement of foreclosure proceedings." (Exh. Q, Doc. 52-17 at 1) (emphasis added).

Considering the language of these letters from the viewpoint of the least sophisticated consumer, they allege that she is obligated on the mortgage loan. Based on this alleged obligation, plaintiff qualifies as a consumer under the FDCPA. *See* 15 U.S.C. § 1692a(3); *Valle v. Green Tree Servicing, LLC*, No. 3:16-cv-277, 2017 WL 1053848, at *5 (D. Conn. Mar. 20, 2017) (finding that communications from debt collector addressed to plaintiff were sufficient to establish standing under the FDCPA); *Strouse v. Enhanced Recovery Co., L.L.C.*, 956 F. Supp.2d 627, 634 (E.D. Pa. 2013) (finding that although plaintiff did not owe the debt arising from an overdue account, defendant addressed multiple letters to her concerning the debt and, thus, she was a consumer allegedly obligated on the debt).

Further, defendants' argument that they never attempted to collect a debt from her is not well-taken. (*See* Doc. 54 at 10). Contrary to defendants' argument, the December 17, 2014 letter addressed to plaintiff instructed her to pay the total past due amount on *her* mortgage loan and warned her that "[i]f you are unable to pay *your mortgage* or bring it current, Green Tree

will consider pursuing all available legal remedies up to and including the commencement of foreclosure proceedings." (Exh. Q, Doc. 52-17 at 1) (emphasis added).

In sum, plaintiff does not need to be a consumer to bring her claim (and qualifies as one in any event), and defendants do not dispute that the mortgage loan to plaintiff's mother was a "debt" for which defendants were "debt collectors." Thus, the only remaining issue is whether defendant Green Tree violated § 1692e's prohibitions. Plaintiff has submitted evidence that Green Tree made "false, deceptive, or misleading representation[s]" and Green Tree has not rebutted this evidence. 15 U.S.C. § 1692e. Specifically, the October 15, 2014 letter from Green Tree to plaintiff stated that Green Tree would modify the mortgage loan if plaintiff complied with the terms of the trial period plan and returned the modification agreement by November 14, 2014. (*See* Exh. L, Doc. 52-12 at 1). Although plaintiff made all payments required under the trial period plan and returned the modification agreement before November 14, Green Tree did not modify the loan as promised. (*See* Exh. G, Doc. 52-7 at 21; Doc. 56-1 at 126). Instead, Green Tree informed plaintiff that she needed to sign a new loan modification agreement before a notary that included an assumption of the loan. (*See* Exh. G, Doc. 52-7 at 19; Doc. 56-1 at 131). Based on this realization that plaintiff needed to assume the loan for the modification agreement to be valid, Green Tree sent plaintiff the December 4, 2014 letter, which stated she had until January 3, 2015 to return a copy of the new loan modification agreement. (*See* Exh. M, Doc. 52-13 at 1). However, when plaintiff had to postpone the December 16, 2014 assumption closing because of her brother's death, Green Tree closed out her loan modification application the next day—before the January 3, 2015 deadline had passed—and without giving her an opportunity to reschedule and complete the assumption closing before the January 3 deadline. (*See* Exh. Q, Doc. 52-17 at 1; Audio Recording 20141216, Exh. P; Audio Recording 20141223-

154122, Exh. P). From the viewpoint of the least sophisticated consumer, no reasonable jury could find that these communications from Green Tree did not constitute "false, deceptive, or misleading representation[s]" concerning what plaintiff needed to do to obtain a loan modification, how long she had to do it, and what Green Tree promised to do. 15 U.S.C. § 1692e.

Based on the foregoing, plaintiff's motion for summary judgment should be granted as to her FDCPA claim and defendants' motion for summary judgment should be denied as to this claim. This matter should proceed to trial to determine the amount of plaintiff's actual damages.

### C. Fraud

In Ohio, the elements of common law fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of Cty. Comm'rs of Stark Cty.*, 491 N.E.2d 1101, 1105 (Ohio 1986) (quoting *Cohen v. Lamko, Inc.*, 462 N.E.2d 407 (Ohio 1984)).

Defendants argue that summary judgment should be granted in their favor on plaintiff's fraud claim because Green Tree did not make a false representation to plaintiff. (Doc. 54 at 11-12). Defendants assert that "[a] material misrepresentation can only be found if one infers the December 4, 2014 letter contained an immutable, irrevocable and unconditional offer to keep the loan modification process open until January 3, 2015, which it does not." (*Id.* at 12). Defendants further contend that plaintiff cannot establish detrimental reliance or injury based on any communication from Green Tree inasmuch as she submitted a new loan modification

application and closed on a modified loan on April 19, 2016. (*Id.*). Defendants argue that the failure to complete the loan modification in December 2014 was "not due to any material misrepresentation on the part of [Green Tree] but was because [plaintiff] failed for almost 2 months to cooperate with [Green Tree] to complete [it]." (*Id.* at 13).

Plaintiff responds that there is a genuine issue of material fact as to whether defendants committed common law fraud. (Doc. 62 at 9). Plaintiff argues that in the October 15, 2014 letter, Green Tree falsely represented that she needed only to return the loan modification agreement to receive a modification without mentioning the need for an assumption closing. (*Id.* at 9-10). Further, plaintiff argues that in the December 4, 2014 letter, Green Tree falsely represented that she had until January 3, 2015 to return the modification agreement and complete the assumption closing. (*Id.* at 10-11). Plaintiff contends she justifiably relied on Green Tree's representation when she attempted to reschedule the assumption closing in December 2014. (*Id.* at 11). Plaintiff argues she suffered injuries in the form of an increased principal balance when the loan was finally modified in April 2016 and severe emotional distress and anguish. (*Id.* at 12).

Here, for the reasons explained above in the Court's FDCPA analysis, a reasonable jury could find that Green Tree made misrepresentations to plaintiff. Further, a reasonable jury could find that plaintiff relied on Green Tree's representation that she had until January 3, 2015 to complete the loan modification and assumption. Specifically, there is evidence that due to her brother's death, plaintiff canceled the December 16, 2014 assumption closing with the expectation that she would be able to reschedule and complete the closing before the January 3 deadline. (*See* Audio Recording 20141216, Exh. P; Audio Recording 20141223-154122, Exh. P). (*See also* Exh. D, Doc. 52-4 at ¶ 19 ("In requesting that the notary appointment be

rescheduled, I believed that I had until January 3, 2015 to complete the Modification process.")).

Further, there is evidence that plaintiff's reliance resulted in injury. Plaintiff attests that as a

result of the modification being denied in December 2014, she "postponed [the] last phase of

[her] nursing program . . . and [her] oldest son elected to postpone enrolling in college." (*Id.* at ¶

24). Subsequently, plaintiff's home was sold at a foreclosure sale although that sale was

eventually unwound after plaintiff filed this lawsuit. (*See* Exh. R, Doc. 52-18; Exh. S, Doc. 52-

19). When the parties finally completed a new loan modification in April 2016, the principal

balance was over $13,000 more than it would have been under the October 2014 loan

modification agreement. (*See* Doc. 56-1 at 186). Plaintiff also attests that Green Tree's handling

of her loan modification "has resulted in sleepless nights, anxiety, stress, and a great deal of

uncertainty in [her] life and the lives of [her] family." (Exh. D, Doc. 52-4 at ¶ 28).

On this record, a jury reasonably could find that the elements of fraud that defendants

challenge in their motion for summary judgment are satisfied. Accordingly, there are genuine

issues of fact on plaintiff's fraud claim that cannot be resolved on summary judgment.

Therefore, defendants' motion for summary judgment should be denied as to plaintiff's fraud

claim and this matter should proceed to trial.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. plaintiff's motion for summary judgment (Doc. 52) be **GRANTED**;

2. defendants' motion for summary judgment (Doc. 54) be **DENIED**; and

3. this matter proceed to trial on plaintiff's fraud claim and to determine the amount of damages for her RESPA and FDCPA claims.

**IT IS SO RECOMMENDED.**

Date: _5/5/17_

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONNA WASHINGTON,
    Plaintiff,

Case No: 1:15-cv-354
Dlott, J.
Litkovitz, M.J.

vs.

GREEN TREE SERVICING LLC, et al.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).